961 F.2d 1565
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Hector A. ORTIZ ORTIZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 91-2149.
 United States Court of Appeals,
First Circuit.
 May 7, 1992
 
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Donna C. McCarthy, Assistant Regional Counsel, Department of Health and Human Services, on brief, for appellee.
 Before Selya, Circuit Judge, Campbell, Senior Circuit Judge, Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Claimant Hector Ortiz Ortiz appeals from a district court judgment affirming the decision of the Secretary of Health and Human Services denying Ortiz's claim for social security disability benefits. We affirm.
 
 I.
 
 2
 Ortiz applied for benefits on September 2, 1988, when he was thirty-three years old. He has a ninth grade education and does not speak English. Ortiz's past relevant work was in the fabric industry. His insured status expired on December 31, 1990.
 
 
 3
 Ortiz claimed that he was disabled due solely to a mental impairment that began on August 25, 1987, his last day of work. At that time he was employed as a material handler for a textile company that manufactured military clothing. Ortiz claimed that he was fired from this job after people began laughing at him. The medical evidence discloses that Ortiz became nervous and confused while working that day and was taken to the doctor. On the following day, Ortiz saw Dr. Jose Infanzon Ochoteco, a psychiatrist he had previously seen on four occasions for an anxiety disorder. Ortiz thereafter received additional treatment at the State Insurance Fund (SIF). Upon completing this treatment, Ortiz applied for disability benefits.
 
 
 4
 Ortiz's claim was denied upon initial review and reconsideration. On June 21, 1989, an administrative hearing was held at which Ortiz, who was represented by counsel, and vocational expert (VE) Miguel Pellicier testified. According to Ortiz's initial application and testimony, in his past job as a material distributor he was required to lift weights of 80 or more pounds and to be constantly standing or walking. Vocational expert Pellicier classified this job as very heavy and low semi-skilled. He also observed that it required frequent contact with people. Ortiz had also worked as a cloth cutter, a position the VE described as medium and semi-skilled. Mr. Pellicier indicated that Ortiz could not perform his past relevant work but could perform other unskilled light jobs that existed in significant numbers in the region where he lives.
 
 
 5
 Pursuant to the Secretary's sequential evaluation process for mental impairments, see 20 C.F.R. § 404.1520a, the administrative law judge (ALJ) found that (1) Ortiz suffered from a severe depressive disorder with anxiety which was evidenced by factors identified in the listing for Anxiety Related Disorders, (20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06); (2) Ortiz's impairment did not meet or equal this listing; (3) the impairment was severe enough to prevent Ortiz from returning to his past relevant work in the fabric industry and (4) Ortiz retained the residual functional capacity to perform other work that did not require the performance of complex tasks and constant dealing with the public. The ALJ found that Ortiz could perform the jobs identified by the vocational expert.[1]
 
 
 6
 The Appeals Council vacated the ALJ's decision. While the Appeals Council agreed that Ortiz suffered from a severe non-exertional impairment that precluded his return to his past work, it ruled that the record did not document the existence of a significant number of jobs that Ortiz could nevertheless perform. Because the ALJ's hypotheticals to the vocational expert did not identify Ortiz's specific limitations, but rather, simply referred to the number of certain exhibits that described Ortiz's condition, it was not clear what specific limitations, if any, the vocational expert considered in enumerating the aforementioned jobs.[2] The Appeals Council directed the ALJ to adduce further vocational testimony to establish the occupational base available to Ortiz and to clearly posit the work-related limitations on Ortiz's residual functional capacity in posing his hypotheticals.
 
 
 7
 A second hearing was held on April 11, 1990, at which only vocational expert Ariel Cintron testified. In contrast to Mr. Pellicier's testimony, Dr. Cintron testified that Ortiz's past job as a material handler (or "cloth boy" in the fabric industry) was light and unskilled. He testified that Ortiz was capable of performing this job because it primarily involved dealing with objects, although contact with other workers was also required. The ALJ relied on this evidence and, in contrast to his first decision, issued a second decision that found that Ortiz was capable of performing his past relevant work as a material handler even though he could not perform work involving complex job instructions, dealing with the public all day and functioning in a constantly changing work setting. The ALJ found that Ortiz also could perform the light, unskilled jobs of a bottle line attendant, marker II, label inspector and gluer II.[3] The Appeals Council denied Ortiz's request for review, thereby rendering the ALJ's second decision the final decision of the Secretary. Ortiz sought judicial review under 42 U.S.C. § 405(g). The district court affirmed the Secretary. This appeal followed.
 
 II.
 
 8
 On appeal, Ortiz argues that the Secretary's decision is not supported by substantial evidence because the ALJ ignored the overwhelming weight of the evidence establishing Ortiz's disability in favor of one or two isolated statements which suggest that Ortiz is not disabled. He further argues that the Secretary failed to consider his allegations of disabling pain and that his physical condition imposed significant limitations that combined with his emotional impairment to render him disabled.[4] Finally, Ortiz contends that the ALJ impermissibly substituted his own medical opinion for the evidence of disability.
 
 
 9
 Our review is limited to determining whether substantial evidence on the record as a whole supports the Secretary's conclusion that Ortiz remains capable of performing his past relevant work as a material handler and the other unskilled jobs of a bottle line attendant, marker II, gluer II and label inspector. Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981). We review the medical evidence.
 
 
 10
 Between 1986 and 1990, Ortiz was treated by four psychiatrists. The Secretary had him examined by a consulting psychiatrist and obtained mental residual functional capacity (RFC) assessments from two nonexamining consultants. The reports of these providers generally indicate that Ortiz suffered from anxiety and depression which was treated with various medications. While there are repeated references to Ortiz as withdrawn and lacking in social contacts, the descriptions of other limitations resulting from his condition varied.
 
 
 11
 Ortiz first sought psychiatric treatment from Dr. Infanzon in 1986. His complaints included severe headaches, nailbiting, and problems with his coworkers. Dr. Infanzon diagnosed an anxiety disorder and prescribed sedatives (i.e., Dalmane and Vistaril). Dr. Jose Rivera Maldonado, a psychiatrist at the State Insurance Fund (SIF), treated Ortiz between October 1987 and May 1988. While Dr. Rivera Maldonado initially found Ortiz to be apathetic, withdrawn, and with "practically nonexistent" interpersonal relations, he noted a "marked decrease in symptomatology" at the conclusion of his eight month course of treatment. He further observed that there was a voluntary component present throughout the symptomatology presented.[5] Dr. Rivera Maldonado diagnosed a depressive disorder with anxiety. His prognosis was guarded due to Ortiz's negative attitude towards work.
 
 
 12
 On October 27, 1988, Dr. Jose Rios Cervantes evaluated Ortiz on behalf of the Secretary. He found Ortiz to be alert but "with not too much contact with the interviewer and the situation." Psychomotor activity was accelerated. He exhibited slight difficulty concentrating, some ideas of reference (e.g., always thinking about the job and how they harmed me), phobic traits and obsessions related to his accident.[6] His abilities to conceptualize, make abstractions, comprehend, make calculations and learn ranged from poor to inadequate. Attention and concentration were decreased. He was oriented only as to person and space. Dr. Rios diagnosed an anxiety disorder with explosive traits, the latter finding being based on descriptions of outbursts described by Ortiz's wife.[7] Dr. Rios found Ortiz able to handle funds with supervision.
 
 
 13
 Approximately six weeks after Dr. Rios' evaluation, Dr. Infanzon interviewed Ortiz and submitted a Mental Impairment Evaluation Report. At that time his attention, concentration, memory and judgment were normal. Ortiz also exhibited a normal flow of thought and speech. While Ortiz claimed that he saw shadows and heard his name being called, Dr. Infanzon did not diagnose the presence of hallucinations. He found Ortiz oriented in person and place, although he sometimes did not know what day it was. Dr. Infanzon indicated that Ortiz did not go out at all, and would have difficulty concentrating and persisting at tasks to complete a normal work day.[8]
 
 
 14
 Dr. Jose Rivera Polanco treated Ortiz between February 1989 and March 1990. He also observed that Ortiz was not too reachable or cooperative and that he appeared to have limited attention. Nevertheless, he noted that Ortiz had adequate contact with reality, orientation, and memory. His judgment and insight were preserved. In March 1990, Dr. Rivera Polanco indicated that Ortiz suffered from one to twenty panic attacks per week and was unable to work productively within an adequate time. Nonetheless, he described Ortiz as oriented in all spheres, coherent, logical and relevant.
 
 III.
 
 15
 On this record, we cannot say that substantial evidence supports the Secretary's conclusion that Ortiz remains able to perform his past work as a material handler. We note that on this issue the ALJ reached contradictory conclusions in his first and second decisions. In so doing, the ALJ appears to have confused the step four and step five inquiries following the Appeals Council's remand. Based on the evidence adduced at the first hearing, both the ALJ and the Appeals Council agreed that Ortiz could not do his past relevant work. The Appeals Council remanded solely for the taking of additional evidence at step five. Yet on remand, the ALJ evaluated the additional vocational evidence with primary reference to step four and reversed his previous ruling that Ortiz could not do his past work as a material handler.[9]
 
 
 16
 The ALJ reached opposing conclusions based on the testimony of two vocational experts. Mr. Pellicier classified the material handler's job as very heavy, low semi-skilled and requiring frequent contact with others. The ALJ's subsequent contradictory finding rested only on Dr. Cintron's testimony. However, that testimony was predicated on the assumption that this position entailed light, unskilled work that primarily required dealing with objects. But the record contains uncontroverted evidence that Ortiz was required to lift weights of eighty or more pounds and constantly stand and walk. These exertional requirements are consistent with heavy work, the classification identified in the Dictionary of Occupational Titles for the position of material handler, DOT # 929.687-030. See 20 C.F.R. § 404.1568(d). Moreover, Mr. Pellicier observed that Ortiz's job required frequent contact with others, a finding which appears to be supported by Ortiz's description of this work.[10] Nothing contradicts this description of Ortiz's past work as a material handler. Where Dr. Cintron did not have the advantage of observing Ortiz testify and appears to have erred in describing the exertional and interpersonal skills required for the performance of this job, we do not think the ALJ may simply accept the latter VE's testimony without coming to grips with the conflict between the Secretary's own two experts and explaining the reversal of his earlier finding.
 
 
 17
 Nevertheless, we think that there is substantial evidence supporting the second basis of the ALJ's decision-the ALJ's conclusion that Ortiz remains capable of performing other work. The ALJ relied largely on the findings of Dr. Luis Umpierre, a nonexamining psychologist, in ruling that Ortiz retained the mental RFC to perform work-related activities except for work requiring the performance of complex job instructions, constant dealing with the public, and a constantly changing work setting. He further found that there were no significant limitations on Ortiz's ability to understand, remember, and carry out short, simple instructions, sustain an ordinary routine without supervision, make simple work decisions, interact with the general public,[11] maintain socially appropriate behavior, and be aware of normal hazards. Moderate limitations were noted in Ortiz's abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, and get along with coworkers. With these restrictions in mind, Dr. Cintron testified that Ortiz could do the repetitive routine jobs of a bottle lane (sic) attendant, marker II, label inspector and gluer II.
 
 
 18
 We think that substantial evidence supports the ALJ's finding that Ortiz's mental RFC would permit him to perform the aforementioned jobs. Contrary to the arguments Ortiz raises on appeal, the ALJ did not substitute his own opinion for the medical evidence which tended to show a disability, nor simply rely on isolated statements that ran contrary to the weight of the evidence. The medical evidence was conflicting, and the ALJ supportably relied on Dr. Rivera Maldonado's report in ruling that Ortiz's complaints were not wholly credible. Dr. Cintron duly considered the limitations posited by the ALJ in identifying various positions Ortiz could still perform.
 
 
 19
 We note that the ALJ on remand did not ask Dr. Cintron how many of the jobs he enumerated exist in the national economy or the region where Ortiz lives.[12] However, both vocational experts identified the job of line attendant (DOT # 920.687-042) as within Ortiz's residual functional capacity. Mr. Pellicier testified that 793 such jobs existed in Puerto Rico, 128 in Ortiz's specific area. We think this sufficient to satisfy the Secretary's burden at step five. Cf. Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988)(500 jobs in claimant's region satisfied "significant numbers" requirement).
 
 
 20
 Judgment affirmed.
 
 
 
 [1]
 We note that there appears to be an error in the transcription of Mr. Pellicier's testimony. The transcript indicates that Mr. Pellicier testified that Ortiz "could do those jobs" when the ALJ asked him whether Ortiz could do his past work. He then went on to say, "Nevertheless, I consider that he could perform other jobs of a simpler nature" and enumerated the positions of hand labeller, cementer, filler and line attendant. The expert's testimony as a whole indicates that Ortiz could not do his past work, as the ALJ initially found
 
 
 [2]
 We note that it appears to be a common practice for ALJs in Puerto Rico to simply refer to the number of an exhibit when posing hypotheticals to vocational experts. This practice creates a significant risk that the hypothetical will be defective. "[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities. To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." Arocho v.Secretary of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982). Simply referring an expert to an exhibit number runs the risk that any ambiguities in the exhibit will remain unclarified and the VE's response will be correspondingly ambiguous
 
 
 [3]
 These positions were identified by Dr. Cintron. The ALJ did not ask Dr. Cintron whether a significant number of each of these jobs existed in the region where Ortiz lives or inseveral other regions of the country. See 20 C.F.R. § 404.1566(a)("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.")
 
 
 [4]
 This last contention appears to be the thoughtless product of a word processor and not the reasoned argument of counsel. While the record contains one isolated reference to a complaint of chronic back pain, Ortiz never postulated this or any other physical impairment as a basis for his disability claim
 
 
 [5]
 In this regard, Ortiz's wife reported that the medications that had been prescribed suited Ortiz but that sometimes he did not want to take them, preferring rather to wander around the neighborhood
 
 
 [6]
 The "accident" is not described in the record, save for a reference to a cut on his left index finger that appears to have been inconsequential
 
 
 [7]
 Ortiz's wife also told Dr. Rios that Ortiz did not visit or get along with anybody
 
 
 [8]
 On January 31, 1990, Dr. Ibzan Perez evaluated Ortiz for the SIF. Dr. Perez observed that Ortiz was tearful, depressed and sad, but oriented in all spheres, with normal perception, and good memory, introspection and judgment. He was coherent, relevant and goal directed. Dr. Perez diagnosed dysthymia and recommended further treatment. His report was not submitted to the ALJ, but it was considered by the Appeals Council
 
 
 [9]
 While the Appeals Council declined to review this decision, it remains unclear whether the Council approved the ALJ's step four determination, step five determination, or both
 
 
 [10]
 Ortiz was responsible for distributing work to coworkers. The record indicates that it was this contact with his coworkers that precipitated the onset of Ortiz's alleged disability. Ortiz testified that he was fired from his job as a material handler after the people he worked with began laughing at him as if he were an animal. The medical evidence indicates that Ortiz became nervous and confused while working that day, as a result of which he was taken to the doctor. He has remained out of work ever since
 
 
 [11]
 We construe this to mean on a less than constant basis
 
 
 [12]
 This too was contrary to the Appeals Council's remand order. ("As appropriate, the ... [ALJ] will ask the vocational expert to identify examples of jobs the claimant can perform and to state the incidence of such jobs in the national economy....")