**Giuseppe MUSTO, Plaintiff,**

**v.**

**William A. HALTER, Acting Commissioner of the Social Security Administration,[1] Defendant.**

**No. CIV.A. 00–10454–WGY.**

United States District Court,
D. Massachusetts.

March 23, 2001.

---

**1.** Kenneth S. Apfel was the original defendant in this action. On January 20, 2001, he was succeeded by William A. Halter. Accordingly, the named defendant in this action automatically changed on that day. Fed.R.Civ.P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Sandra L. Smales, Boston, MA, for Plaintiff.

Gina Y. Walcott, U.S. Attorneys Office, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The plaintiff, Giuseppe Musto ("Musto"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance benefits. Musto argues that the Commissioner's decision is legally erroneous and not based on substantial evidence. He therefore asks this

Court either to reverse and remand the case to the Commissioner for an administrative determination of the amount of benefits due and past due to him, or to remand his case to the Commissioner for further proceedings. He also seeks reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and "other relief as [the Court] deems to be reasonable and just." Compl. at 3.

## I. BACKGROUND

### A. Factual Background

Musto was born in Italy on July 17, 1946 and attended school there through the fifth grade. R. at 18, 27. He immigrated to Long Island, New York, *id.* at 27, and he subsequently relocated to Boston, Massachusetts, *id.* at 27–28. From 1969 to 1988, Musto worked exclusively as a construction laborer. *Id.* at 115, 130. His duties included: pouring concrete; operating construction equipment; lifting and carrying supplies, lumber, and equipment; digging trenches; and performing other manual labor. *Id.* at 116, 131.

On October 3, 1988, while working, Musto twisted suddenly to avoid a heavy load coming toward him on a crane, which threatened to knock him off of a building. *Id.* at 95. Although he immediately noticed discomfort in his lower back, he returned to work. *Id.* The following day, Musto experienced a "snap" in his back while throwing a hose over a wall. *Id.* His lower back pain increased and he sought care in the Massachusetts General Hospital Emergency Room. *Id.* at 95, 223–24.

### B. Medical Evidence

Although Musto alleges that his disability arises from his injury on October 3, 1988, prior to this date he had experienced back pain, persistent headaches, depression, anxiety, stress-related impotence, fatigue, and decreased energy. Pl.'s Mem. at 2; R. at 230–32, 308–10. Following his accident, Musto's preexisting lower back pain increased, becoming accompanied by back spasms and failing to remit with medication. R. at 221–22. He was treated at Massachusetts General Hospital on October 3, October 10, and October 25, 1988. *Id.* at 221–25. At these visits, Musto was diagnosed with subacute low back strain and prescribed Motrin, Flexeril, Valium, and two weeks of rest. *Id.* at 221–22, 225. An x-ray of his lumbar spine taken at Massachusetts General Hospital on October 10, 1988 revealed well-preserved intervertebral disc spaces, no evidence of fracture or subluxation, and no significant abnormality of the bones, joints, or soft tissues. *Id.* at 219.

From March 1989 to February 1991, Musto received treatment from Dr. Deepak S. Tandon for sciatica, limping, cramping, numbness, and lower back and occasional buttock pain radiating into the legs. *Id.* at 237–51. X-rays taken on April 5, 1989 revealed some degenerative changes of the anterior cruciate joint in the right shoulder, degenerative changes at C5–6 with spurring, and some narrowing at L3–4. *Id.* at 201. An MRI of the lumbosacral spine taken on April 27, 1989 showed degenerative change with minimal diffuse disc bulging at L2–3, degenerative change in the disc with moderate diffuse disc bulging at L3–4, degenerative change in the disc with mild diffuse bulging at L4–5, and a superimposed small focal right sided disc herniation, mildly encroaching on the right lateral recess in contact with the L5 nerve root. *Id.* at 198. On September 13, 1989, Dr. Tandon noted that his diagnosis was "lumbar degenerative disc disease with small L4–L5 disc herniation to the right side, irritating the right L5 nerve root." *Id.* at 241. Dr. Tandon further stated: "I do believe that considering [Musto's] job

as a laborer he is totally disabled and do not feel that this should be his livelihood unless there is a total improvement in his picture." *Id.*

In addition to the care he received from Dr. Tandon, Musto was seen by numerous other doctors from 1989 to 1991. From November 1989 to March 1991, Musto saw Dr. Stephen B. Aust. Dr. Aust noted decreased lumbar flexion, decreased reflex and sensation, and difficulty walking. He recommended manipulation and physiotherapy. *Id.* at 253. On April 16, 1991, Musto was seen by Dr. Gigi Girgis, a consulting examiner. Dr. Girgis attributed Musto's difficulties to mechanical low back pain. *Id.* at 254. An x-ray taken at Dr. Girgis's request showed spinal structures consistent with muscle spasm. *Id.* at 256. On May 31, 1991, Musto consulted Dr. Kathryn Sewell about parasthesias, numbness, and itching. *Id.* at 262, 306. Dr. Sewell prescribed Benadryl and referred Musto to Dr. Albert Galaburda. *Id.* at 302. On June 17, 1991, Dr. Galaburda examined Musto. He noted that Musto's exam was essentially normal and stated that it might be necessary to treat Musto symptomatically with an antidepressant. *Id.* at 259.

An MRI of Musto's lumbosacral spine, taken on March 19, 1993, revealed slight degenerative change at L2–3, degenerative change at L3–4 with mild diffuse disc bulging and anterior ridging, congenitally narrow lateral recesses at L4–5, degenerative change with mild diffuse disc bulging and slight ridging at L4–5, and a small superimposed disc herniation, "quite likely a free fragment, in contact with the L5 nerve root." *Id.* at 196, 313.

In September 1995, Musto began treatment with Dr. Rosalind Segal. *Id.* at 289. In October 1995, Dr. Segal described Musto's pain as "severely limiting." *Id.* at 292. She prescribed Robaxin, Reflafin, Trazo-

done, and Tegretol and suggested that Musto continue a mild exercise program. *Id.* She stated that Musto would be unlikely to benefit from surgery. *Id.* On January 28, 1996, Dr. Segal observed that Musto might be able to return to work if several conditions were met:

1) He would initially have to work part-time, and increase to full-time work within several months if he continues at his current level of function. 2) He cannot lift any heavy materials. Even a 20 lb. weight may currently exacerbate his symptoms, depending on how the weight is distributed. 3) He may require intermittent rests, more frequent than the normal working day would permit.

*Id.* at 289. On October 18, 1996, Dr. Segal noted that a series of lumbar epidural steroid injections did not appear to aid Musto's condition and that "[h]is exam is unchanged, with tenderness over the lower spine, and right paraspinal muscles, and decreased sensation in the right lower extremity." *Id.* at 267. Dr. Segal reiterated that Musto "could only return to a job where he did not need to perform lifting, or to walk long distances, or to stand or sit for a prolonged period of time." *Id.* at 266.

### C. Administrative Proceedings

Musto filed an application for a period of disability and disability insurance benefits on December 3, 1996, *id.* at 86–88, alleging disability as of January 1, 1993, *id.* at 86. The Commissioner initially denied Musto's claim and upon reconsideration denied it again. *Id.* at 63–66, 69–71. At Musto's request, an administrative law judge heard the case on December 2, 1997. *Id.* at 24–60. After considering the case de novo, the administrative law judge held, on February 27, 1998, that Musto was not disabled within the meaning of the Social Security Act. *Id.* at 14–22. Specifically,

the administrative law judge found that "the medical evidence establishes that the claimant would not be precluded from performing, at a minimum, a wide range of at least sedentary work." *Id.* at 20. The judge noted that this conclusion was consistent with the objective medical evidence and the diagnoses of Musto's treating and examining physicians. *Id.* at 21. Furthermore, the administrative law judge concluded that the severity of pain described by Musto was not credible. *Id.* at 22. The Appeals Council subsequently denied Musto's request for review of the decision of the administrative law judge on January 15, 2000. *Id.* at 7–8. The decision of the administrative law judge, therefore, became the final decision of the Commissioner with respect to Musto's claim. 42 U.S.C. § 405(g); R. at 7–8.

## II. STANDARD OF REVIEW

■ The Court's review of a Social Security disability benefit determination is limited under section 205(g) of the Social Security Act, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see also Bazile v. Apfel,* 113 F.Supp.2d 181, 184 (D.Mass.2000); *Guyton v. Apfel,* 20 F.Supp.2d 156, 161 (D.Mass.1998). "Substantial evidence" exists when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." *Ortiz v. Sec'y of Health & Human Serv.,* 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 [1st Cir.1981]) (internal quotation marks omitted). The Commissioner makes determinations as to credibility and draws inferences from the record evidence. *Id.* Therefore, this Court must affirm the Commissioner's decision "even if the record arguably could justify a different con-

clusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Sec'y of Health & Human Servs.,* 819 F.2d 1, 3 (1st Cir.1987) (citing *Lizotte v. Sec'y of Health & Human Servs.,* 654 F.2d 127, 128 [1st Cir.1981]). Even in the presence of substantial evidence, however, the Court may review conclusions of law, *Slessinger v. Sec'y of Health & Human Servs.,* 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citing *Thompson v. Harris,* 504 F.Supp. 653, 654 [D. Mass.1980]), and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts," *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999) (per curiam).

■ As the claimant, Musto bears the initial burden of establishing, through credible evidence, that he was disabled within the meaning of the Social Security Act. *Deblois v. Sec'y of Health & Human Servs.,* 686 F.2d 76, 79 (1st Cir.1982); *Guyton,* 20 F.Supp.2d at 161. Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The statute further provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....

*Id.* § 423(d)(2)(A). "Thus, evidence of an impairment is not enough to warrant an

award of benefits; there must also be evidence in the record that the impairment prevented the claimant from engaging in any substantial activity." *Durant v. Chater,* 906 F.Supp. 706, 711 (D.Mass.1995) (citing *McDonald· v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1120 [1st Cir.1986]).

Regulations promulgated by the Social Security Administration have reduced this determination of disability to a five-step analysis. The administrative law judge must follow the sequential evaluation process set forth in sections 404.1520 and 416.920 of Title 20 of the Code of Federal Regulations and determine:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520(a); *accord id.* § 416.920(a); *see also Goodermote v. Sec'y of Health & Human Servs.,* 690 F.2d 5, 6–7 (1st Cir.1982) (describing the five-step process). Under this process, the analysis of the administrative law judge ends "as soon as a determination of a claimant's disability vel non is made." *Guyton,* 20 F.Supp.2d at 162 n. 7 (citing 20 C.F.R. § 404.1520[a] ["If we can find that you are disabled or not disabled at any point in the review, we do not review your claim further."]).

## III. DISCUSSION

### A. The Commissioner's Decision

Musto argues that the Commissioner's decision to deny his claim for Social Security disability benefits was not supported by substantial evidence and was based on errors of law. Pl.'s Mem. at 2. First, he asserts that the rejection of his claim of disabling pain by the administrative law judge was improper. *Id.* at 12, 16. Second, Musto contends that the finding of the administrative law judge that a wide range of sedentary jobs were available to him relied on a flawed assessment by the vocational expert and was not supported by substantial evidence. *Id.* at 12–13, 16–19. Third, Musto alleges that the administrative law judge failed adequately to develop the record of his depression and the side effects of his medications.[2] *Id.* at 13, 19–20.

### 1. Musto's Subjective Complaints of Pain

 The regulations establish that in cases such as Musto's, in which a claimant has a medically-determinable severe physical impairment that is of less severity than the impairments described in Appendix 1 of subpart P of part 404 of the regulations,[3] "the administrative law judge must consider the impact of related symptoms, including pain, on the claimant's residual functional capacity." *Bazile,* 113 F.Supp.2d at 185 (citing 20 C.F.R. § 404.1529[d][4]). Thus, the administrative law judge evaluates the claimant's subjective complaints of pain and deter-

**2.** Under *Avery v. Secretary of Health & Human Services,* 797 F.2d 19 (1st Cir.1986), the purported side effects of Musto's medications are more properly considered as an element of his pain argument, *id.* at 29. The treatment of these side effects by the administrative law

judge is therefore discussed within the pain analysis below.

**3.** Appendix 1 contains the listed impairments that on their face constitute a disability under the Act.

mines what probative weight to give to them. This decision is guided by the First Circuit's opinion in *Avery v. Secretary of Health & Human Services*, 797 F.2d 19 (1st Cir.1986), in which the court established that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir.1989) (per curiam) (interpreting *Avery*, 797 F.2d at 21). Thus, even when claimants assert that they suffer from a degree of pain that exceeds their physical symptoms, *Avery* "provides leeway for the administrative law judge to award benefits." *Bazile*, 113 F.Supp.2d at 185. *Avery* requires the administrative law judge to consider six factors in evaluating a claimant's subjective allegations of pain:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

*Avery*, 797 F.2d at 29. A finding that a claimant is not credible "must be supported by substantial evidence," *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986) (per curiam), and "must be bolstered by specific findings as to the relevant evidence considered in determining to disbelieve the claimant," *Pilet v. Apfel*, 20 F.Supp.2d 240, 246 (D.Mass. 1998).

█ In the instant case, the administrative law judge made reference to the criteria set forth in *Avery*, *Frustaglia v. Secre-tary of Health & Human Services*, 829 F.2d 192 (1st Cir.1987) (per curiam), and Social Security Ruling 88–13, and concluded that Musto's "complaints of pain are substantially out of proportion to the physiological and anatomical findings of the examining physicians" and that "his complaints of severe, unremitting pain are not credible." R. at 21. When supported by specific findings, the opinion of an administrative law judge is entitled to great deference. *Guyton*, 20 F.Supp.2d at 165. In this case, the administrative law judge described his specific findings as follows: Musto does not require any great amount of pain medication; he is able to care for his personal needs; and his daily activities are not severely restricted. *Id.* Musto alleges that these findings do not constitute "substantial evidence" that he is not credible because the administrative law judge mischaracterized his daily living activities and failed properly to evaluate the effects of his medications.

### a. Daily Living Activities

In finding that Musto's allegations of pain were not credible, the administrative law judge focused primarily on the nature of Musto's daily activities. In so doing, the administrative law judge appears to have characterized the evidence in order to put the most positive spin on Musto's abilities. For example, the administrative law judge stated that Musto "goes for one or two-hour walks around Jamaica Pond or the arboretum." R. at 21. In contrast, the record indicates that although Musto may attempt to walk for as much as one to two hours at a time on a good day, he sometimes stops to rest because of back pain. *Id.* at 41–42, 49. The administrative law judge stated that Musto "walks to get the paper," *id.* at 21, while the record indicates that the paper is delivered once a week to Musto's house, *id.* at 33–34. The

administrative law judge also noted that Musto is able to go grocery shopping. *Id.* at 21. The record indicates that although, on a good day, Musto might be able to lift a shopping bag containing pasta and milk from a table, he uses a cart to transport the groceries to his car. *Id.* at 42–43. The administrative law judge further observed that Musto "does household repairs" and "takes out the garbage." *Id.* at 21. The record indicates that Musto does minor repairs around the house and drags, rather than lifts, the trash barrels. *Id.* at 38. The administrative law judge noted that Musto "has a small garden and rakes leaves, mows the lawn, and sometimes shovels." *Id.* at 21. Although the transcript indicates that Musto gardens and rakes the leaves, *id.* at 36, 39, he uses a self-propelled machine to cut the grass, and his son assists with the shoveling, *id.* at 39. The administrative law judge also noted that Musto "drives a Toyota pickup truck and is also able to use public transportation." *Id.* at 21. Although this is accurate, *id.* at 39, the administrative law judge failed to note that Musto also testified that he does not go very far, *id.* at 48 ("I don't go, no not far.... I don't go nowhere."). Finally, the administrative law judge observed that Musto "testified that he took a trip to Italy two years ago," *id.* at 21, but did not further state that Musto testified that he did not enjoy the trip, nor ask whether he failed to enjoy the trip because of his pain, *id.* at 36.

The record of Musto's daily activities is underdeveloped, and the administrative law judge frequently appeared to be rushing to the next question, even when Musto's answers were vague and incomplete. A typical exchange occurred when the administrative law judge inquired about snow shoveling:

Q: Okay, and last winter we had no snow, but do you shovel?

A: Sometime, what I can, yes. But when I, I can't, I you know, what I can.

Q: Yeah.

A: My son sometimes is coming out, you know, out—

Q: Okay. · What kind of car do you drive?

*Id.* at 39. In light of such abbreviated and confused exchanges, it is difficult to determine how the administrative law judge could draw accurate conclusions about Musto's abilities and daily activities.[4]

Nevertheless, although the inquiry undertaken by the administrative law judge could have been more thorough, and his characterization of Musto's testimony casts it in the light least favorable to Musto's position, the characterization of Musto's daily activities by the administrative law judge is not so flawed as to warrant remand. *Bazile,* 113 F.Supp.2d at 188 ("It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings." [quoting *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3d Cir. 1974)]). The minor discrepancies between the facts as characterized by the administrative law judge and the facts as reflected in the record and Musto's Memorandum, Pl.'s Mem. at 14–15, simply do not justify a finding that the credibility determination of the administrative law judge was not supported by substantial evidence.[5] *Compare Hauk v. Chater,* 894

---

**4.** A similarly odd exchange occurred when the administrative law judge asked about Musto's ability to mow the lawn:

Q: Cut the grass?
A: Yes. The machine (INAUDIBLE).
Q: Self propelled?
A: Yes.
Q: Zoom.
A: Yeah.
R. at 39.

**5.** This Court does not intend to underrate the importance of correct fact-finding by the ad-

F.Supp. 407, 412 (D.Kan.1995) (holding that substantial evidence existed to support the decision by the administrative law judge despite his potentially inaccurate credibility findings), *and Gilson v. Apfel*, No. C 99–2234, 2000 WL 145814, at *5 (N.D.Cal. Feb. 2, 2000) ("Plaintiff may ... be correct to assert that the ALJ's opinion included some minor misstatements. However, even considering these errors, it is clear that the ALJ's decision was supported by substantial evidence."), *with Aguiar v. Apfel*, 99 F.Supp.2d 130, 137–38 (D.Mass.2000) (Tauro, J.) (rejecting credibility determination of administrative law judge who failed to make any mention of *significant* limitations on claimant's daily activities), *and Rohrberg v. Apfel*, 26 F.Supp.2d 303, 308–09 (D.Mass.1998) (Freedman, J.) (determining that the inquiry by the administrative law judge into the claimant's activities was "woefully inadequate," and concluding that the administrative law judge therefore could not make a meaningful determination regarding the plaintiff's subjective assertions of pain). As a whole, the record in this case supports the determination of the administrative law judge that Musto leads a fairly active life, and his findings to that effect ought not be disturbed.

### b. Effects of Medications

Musto asserts that "[t]he ALJ made no findings with regard to the side effects of [his] medication." Pl.'s Mem. at 19. The Court agrees that the administrative law judge failed to give due consideration to the type, dosage, effectiveness, and adverse effects of Musto's pain medications. Although the administrative law judge began questioning Musto about this *Avery* factor, it is unclear from the transcript about which of Musto's medications the administrative law judge intended to inquire, or what specific information he was attempting to elicit:

Q: [Dr. Segal] has prescribed medication, anti-inflammatory medication, muscle relaxant, and a pill for depression?

A: I guess so.

Q: Makes you smile, you take the pill, you smile?

A: Well yeah—

Q: That, that's the idea—

A: —it gives more than—

Q: Huh?

A: It make you stupid, I think. (INAUDIBLE) you take them in the night you don't go to sleep.

Q: To go to sleep?

A: Yes.

Q: And does that help you sleep through the night?

A: Well they help you to rest a little bit.

Q: Can you sleep through the night with a pill?

A: It did help a lot, yes.

Q: It does. It still doesn't make you smile?

A: No, no yet.

R. at 32–33. This exchange is wholly inadequate to satisfy *Avery*'s requirement that

ministrative law judge, however. *See Bazile*, 113 F.Supp.2d at 188 n. 3 (citing *United States v. Forness*, 125 F.2d 928 [2d Cir. 1942]). In *Forness*, the Second Circuit described the "grave importance of fact-finding":

The correct finding, as near as may be, of the facts of a law suit is fully as important

as the application of the correct legal rules to the facts as found. An impeccably 'right' legal rule applied to the 'wrong' facts yields a decision which is as faulty as one which results from the application of the 'wrong' legal rule to the 'right' facts.

*Forness*, 125 F.2d at 942.

an administrative law judge consider the type, dosage, effectiveness, and adverse side-effects of any medication. Notably, the administrative law judge did not explore the seeming contradiction in Musto's testimony when first Musto said that the pills make it difficult for him to sleep through the night, and then he said that they help him to sleep through the night. In addition, the administrative law judge did not follow up on what Musto meant when he said that his medication makes him "stupid." *Id.* at 32. Nor did the administrative law judge appear adequately to explore the physical side-effects of Musto's lengthy history of medications:

A: ... Dr. Segal is concerned about his liver with all the pain medications taken.

Q: Uh-huh. Do you have any problems with your taking the medication?

A: Well they says is a little swollen, the liver, so they do x-ray. I don't know now, yet, the result.

Q: So aside from seeing Dr. Segal and this internist, you don't see any other doctors, is that correct?

*Id.* at 44. And the record is also unclear as to whether the epidural steroid shots

Musto received either alleviated his pain or caused any side effects:

A: Even, even, even lately, they tried to give me, you know, steroid injection.

Q: Right. I see that.

A: (INAUDIBLE) after then, now, I'm be more so than before.

Q: Uh-huh. So you've had shots at the—

A: Beth Israel.

Q: Beth Israel?

A: Yes.

Q: Now they can only do so many of those every so many months, is that right?

A: They did (INAUDIBLE) graduate lately, every month, before the, the month, the first three. And then the, the last two every, every month.

Q: Uh-huh. So you've completed—

A: Five, five, yes.

*Id.* at 45–46.

■ Because exchanges such as these are more confusing than informative,[6] the administrative law judge failed adequately to develop the record of Musto's pain medications. *Corchado v. Shalala,* 953 F.Supp. 12, 16 (D.Mass.1996) ("[T]he Ad-

---

6. It is worth noting that the record of the effects of medication was similarly underdeveloped in *Bazile,* and that in both *Bazile* and the instant case a great deal of the confusion in the record appears to stem from a language barrier. *See Bazile,* 113 F.Supp.2d at 190 ("It is clear from the transcript that Bazile, perhaps because of a language barrier, frequently was confused about the questions asked by her attorney and the administrative law judge."). In the interest of providing a clear record for review, greater use of interpreters should be made. Although Musto was provided with an interpreter, he appears to have been discouraged from relying on her:

ATTY: Your Honor, do you think that an interpreter would be helpful with some of this testimony? I—
ALJ: That's up to you. He seems to be responding.

ATTY: You seem to, yeah. I wasn't sure whether, parts of the sentences might be unclear.
ALJ: Well we'll, we'll ask Mr. Musto. You, you have no problem understanding me?
CLMT: Well some, you know, what I don't understand—
ALJ: Yeah, you've asked her three times—
CLMT: Yeah.
ALJ:—during the course of this hearing. But other than that—
ATTY: And—
ALJ:—he seems to be responding—
ATTY:—Mr. Musto's responses—
ALJ:—to your, to you as well.
ATTY: Yeah.
ALJ: Only three times did he need assistance.
R. at 54.

ministrative Law Judge neglected to ask [the claimant], as *Avery* requires, whether any of [the claimant's pain] treatments had either alleviated his pain or caused any adverse side effects."). Therefore, his conclusion that Musto's assertions of pain were not credible and his finding that Musto has the residual functional capacity to perform sedentary jobs are not supported by substantial evidence. *Bazile*, 113 F.Supp.2d at 190; *Corchado*, 953 F.Supp. at 16 ("Because the Administrative Law Judge did not adequately develop the record as to [the claimant's] subjective complaints of disabling pain, her conclusion that [the claimant] has the residual functional capacity to perform sedentary work is not supported by substantial evidence.").[7] "When evidence has not been evaluated because of an error of law, the [Commissioner's] decision must be set aside." *Bazile*, 113 F.Supp.2d at 190 (citing *DaRosa*, 803 F.2d at 26). This Court must therefore vacate the decision of the administrative law judge and remand to the Commissioner for proceedings consistent with this opinion and the guidelines expounded in *Avery*. After such proper inquiry, the administrative law judge may again find that Musto's allegations concerning the extent of his pain are not credible, provided that the judge sets forth "specific findings as to the relevant evidence he considered in determining to disbelieve" Musto. *DaRosa*, 803 F.2d at 26; *Corchado*, 953 F.Supp. at 16.

## 2. Musto's Ability to Perform Substantial Gainful Work

▮▮▮ After reviewing the entire record, the administrative law judge determined that Musto could no longer perform his past work as a construction laborer because his medical condition precludes heavy work requiring heavy lifting and frequent bending and reaching. R. at 20. Having found that Musto could not perform his past relevant work, the burden then shifted to the Commissioner to establish that there are a significant number of jobs in the national economy that Musto could perform. *Hernandez v. Weinberger*, 493 F.2d 1120, 1122–23 (1st Cir.1974); *Aguiar*, 99 F.Supp.2d at 132; *Guyton*, 20 F.Supp.2d at 162. According to the decision issued by the administrative law judge, this burden was met by the testimony of a vocational expert, who testified that Musto could perform a variety of unskilled sedentary jobs that exist in significant numbers in the economy. R. at 20. The administrative law judge relied on the testimony of the vocational expert to conclude that Musto retains the residual functional capacity to perform several sedentary jobs. *Id.* at 21.

Musto argues that the testimony of the vocational expert, upon which the administrative law judge relied, does not amount to "substantial evidence" because "the ALJ and the vocational expert both elided over [Musto's] inability to engage in sedentary activity." Pl.'s Mem. at 16. Specifically, Musto notes that the hypothetical questions posed to the vocational expert did not explicitly include a restriction on prolonged sitting but rather included restrictions only on "prolonged lifting, walking, standing, et cetera." *Id.* at n. 3 (quoting R. at 58).

---

**7.** Although the questioning by the administrative law judge about the remaining *Avery* factors was exceedingly brief, he appears to have developed the record sufficiently with respect to five of the six *Avery* factors: (1) duration and frequency of Musto's pain, R. at 29, 38, 40–41; (2) precipitating and aggravating factors, *id.* at 39–41, 52; (4) treatments other than medication for relief of pain, *id.* at 32–33, 44–45; (5) functional restrictions, *id.* at 34–38, 41–42; and (6) daily living activities, *see* discussion *supra*.

"[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." *Id.*

In the instant case, the use by the administrative law judge of the word "et cetera" incorrectly characterized Dr. Segal's assessment of Musto's residual functional capacity and failed clearly to convey the parameters of Musto's restrictions to the vocational expert. *Compare Arocho*, 670 F.2d at 375–76 (inadequate hypothetical questions), *with Martinez v. Heckler*, 807 F.2d 771, 773–75 (9th Cir.1986) (adequate hypothetical questions). Furthermore, the reference to "the restrictions that his attending physician, Dr. Segal, ... placed on him," R. at 58, is insufficient to clarify the nature of Musto's limitations for the vocational expert. *Cf. Ortiz Ortiz v. Sec'y of Health & Human Servs.*, 961 F.2d 1565, 1992 WL 92700, at *1 (1st Cir. May 7, 1992) (unpublished table decision)[8] (finding that when the hypothetical questions did not identify the claimant's specific limitations, but rather referred to the number of certain exhibits that described his condition, it was not clear what specific limitations, if any, the vocational expert considered in enumerating available jobs); *id.* at *1 n. 2 ("Simply referring an expert to an exhibit number runs the risk that any ambiguities in the exhibit will remain unclarified and the [vocational expert]'s response will be correspondingly ambiguous.").

Here, the Court rules that the hypothetical question by the administrative law judge failed to incorporate a fair representation of Musto's medically diagnosed limitations and that the finding below that various sedentary positions remain available to Musto is therefore not supported by substantial evidence.[9] *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir.1994) (holding that when the hypothetical question did not

---

**8.** For the propriety of citing and relying on unpublished opinions, *see Anastasoff v. United States*, 223 F.3d 898, 899–905 (8th Cir.) (R. Arnold, J.) (holding that unpublished opinions have precedential effect); *vacated as moot*, 235 F.3d 1054 (8th Cir.2000); *Giese v. Pierce Chem. Co.*, 43 F.Supp.2d 98, 103 (D.Mass. 1999); Richard S. Arnold, *Unpublished Opinions: A Comment*, 1 J.App. Prac. & Process 219 (1999).

**9.** This case is distinguishable from *Torres v. Secretary of Health & Human Services*, 870 F.2d 742 (1st Cir.1989) (per curiam), in which the First Circuit held that a claimant's failure to object to the phrasing of the hypothetical question or to elicit more information from the vocational expert on cross-examination foreclosed the claimant from subsequently claiming error, *id.* at 745–46. In *Torres*, the court concluded that because the record was limited and medical evidence was addressed substantially to a single impairment, it was not likely that the vocational expert would have failed to focus on that impairment in answering the hypothetical. *Id.* In contrast, in the instant case, the record is unclear about the duration of time that Musto is capable of sitting. In the absence of clear parameters, the vocational expert would not know what limitations, if any, to place on Musto's ability to sit in forming his assessment. Therefore, the hypothetical question did not contain a significant limitation, and remand is required so that a vocational expert, properly informed of Musto's limitations, can determine whether there are sedentary jobs that Musto can perform. *Torres v. Sec'y of Health & Human Servs.*, 976 F.2d 724, 1992 WL 235535, at *6 (1st Cir. Sept. 23, 1992) (unpublished table decision) (distinguishing *Torres*, 870 F.2d 742, and remanding for appropriate hypothetical questions).

include a significant functional limitation, the administrative law judge could not rely on the vocational expert's response); *Torres v. Sec'y of Health & Human Servs.,* 976 F.2d 724, 1992 WL 235535, at *5 (1st Cir. Sept. 23, 1992) (unpublished table decision) ("[T]he hypothetical posed to a [vocational expert] must accurately reflect the claimant's limitation in order for the [vocational expert]'s response to constitute substantial evidence sustaining the [Commissioner's] burden at step five to identify alternate work the claimant can perform."); *Arocho,* 670 F.2d at 375–76 (response to defective hypothetical question does not constitute substantial evidence); *see also Cooper v. Sullivan,* 880 F.2d 1152, 1158 n. 13 (9th Cir.1989) (same); *O'Leary v. Schweiker,* 710 F.2d 1334, 1343 (8th Cir.1983) (same). As a result of the defective hypothetical question posed here, the administrative law judge failed to determine whether the limitation on Musto's ability to sit is so great as to preclude sedentary employment. *See Rosado v. Sec'y of Health & Human Servs.,* 807 F.2d 292, 293 (1st Cir.1986) ("A determination that a claimant is able to perform sedentary work 'must be predicated upon a finding that the claimant can sit most of the day, with occasional interruptions of short duration.'" [quoting *Shiner v. Heckler,* 608 F.Supp. 481, 484 (D.Mass.1985) ] ); *DaRosa,* 803 F.2d at 26 (citing *Thomas v. Sec'y of Health & Human Servs.,* 659 F.2d 8, 10–11 [1st Cir.1981] ). A hypothetical question that explicitly outlines the limitations on Musto's ability to sit could well alter the vocational expert's conclusion that Musto is capable of some sedentary employment, and thus this Court must vacate and remand for further proceedings.

### 3. Musto's Claims of Depression

█ Musto contends that the administrative law judge erred in failing to make findings regarding his depression, "despite repeated references both to the history and ongoing indications of depression" in the record. Pl.'s Mem. at 19 (citing R. at 32, 174–75, 225, 230, 259, 308, 310, 314). To establish entitlement to benefits, however, a plaintiff must prove that he is disabled within the meaning of the Social Security Act. *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Deblois,* 686 F.2d at 79. The Act provides that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). Therefore, before the burden shifted to the Commissioner to prove that jobs remained available to Musto in the national economy, Musto first had to demonstrate that he had a medically severe impairment or combination of impairments. "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Yuckert,* 482 U.S. at 146 n. 5, 107 S.Ct. 2287.

Based on the present record, Musto did not meet his burden of showing that his depression, either alone or in combination with his back injury, is either medically severe or disabling. Although the record is indeed peppered with references to Musto's depression, there is absolutely no indication that it rises to the level of interfering with his ability to "engage in any substantial gainful activity." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Only nine references to depression occur in a record of more than three hundred pages. R. at 32, 174–75, 225, 230, 259, 308, 310, 314. Indeed, two of the references do not even specifically state that Musto is depressed. *E.g., id.* at 174 ("This injury has turned my life upside down. It has ruined my life financially, physically, and mentally."). The other seven references to depression

consist of the generalized inquiry about Musto's medications, *id.* at 32; two patient history forms that note "depression" without further comment, *id.* at 225, 230; the impressions of Dr. Galaburda, in which he stated "[i]t may be necessary to treat [Musto] symptomatically, with an antidepressant, for instance," *id.* at 259; medical records from 1986 in which Musto's fatigue, stress, anxiety, and impotence are noted, *id.* at 308, 310; and a prescription sheet from Dr. Segal in which she notes that Musto is receiving 150 mg of Trazodone daily for depression, *id.* at 314. Despite prescribing Trazodone for Musto, however, Dr. Segal did not note his depression or include it among the factors that she considered in her assessment of Musto's ability to return to work. *Id.* at 266, 292.

The cumulative weight of this evidence is not sufficient to satisfy Musto's burden of showing that his depression is disabling, either alone or in combination with his back injury. *Goodermote,* 690 F.2d at 7; *Deblois,* 686 F.2d at 79–80; *see also* 42 U.S.C. § 423(d)(5)(A). Indeed, the issue of depression does not even appear to have been properly placed before the administrative law judge. Musto's own doctor did not evaluate the effects of his depression on his ability to work. R. at 266, 292. Musto's attorney did not ask him any questions about depression. *Id.* at 49–55. Nor did Musto's attorney pose a hypothetical question to the vocational expert that included depression among Musto's limitations. *Id.* at 58–60. Thus, the administrative law judge did not err by discounting the record's sporadic references to depression and concluding that any depression that Musto may have, either alone or in combination with his other impairments, did not result in a functional limitation. *Lovely v. Apfel,* No. Civ. 00–196, 2000 WL 1745076, at *5–6 (D.N.H. Oct. 20, 2000).

## B. Reasonable Attorneys' Fees

Musto seeks to recover his attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (the "Act"). The Act states that a "court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1)(A). The Act further provides that a party seeking an award of attorneys' fees shall submit an application to the court within thirty days of final judgment in the action. *Id.* § 2412(d)(1)(B). An administrative decision does not constitute a "final judgment" for the purposes of awarding attorneys' fees under the Act. *Melkonyan v. Sullivan,* 501 U.S. 89, 95, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). In contrast, the judgment of a district court under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), "fits squarely within the term 'final judgment' as used in section 2412(d)." *Shalala v. Schaefer,* 509 U.S. 292, 298, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Therefore, this Court's remand of the case to the administrative law judge constitutes a "final judgment" under the Act. *Corchado,* 953 F.Supp. at 17; *Durant,* 906 F.Supp. at 713. Musto may file an application for attorneys' fees under the Act within thirty days of this order. He may not, however, recover any fees incurred during administrative proceedings held subsequent to the remand because this Court does not retain jurisdiction over the case. *Corchado,* 953 F.Supp. at 17 (citing *Schaefer,* 509 U.S. at 299–300, 113 S.Ct. 2625); *Durant,* 906 F.Supp. at 713–14.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion. At this point, the Court denies attorneys' fees without prejudice to an application within thirty days of this order.