**Not for Publication in West's Federal Reporter -**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-2349

REBECCA M. ROBERTS,

Plaintiff, Appellant,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. David L. Martin, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,
Lipez and Howard, Circuit Judges.

Ronald B. Eskin, John J. Keefe and Keefe and Associates on
brief for appellant.
Margaret E. Curran, United States Attorney, and Lisa Dinerman,
Assistant United States Attorney, on brief for appellee.

June 20, 2003

**Per Curiam.** Claimant Rebecca M. Roberts appeals from the denial of Social Security disability benefits. The parties consented to have the matter heard by a magistrate judge, and this judge affirmed the decision of the Commissioner of Social Security that claimant retained the residual functional capacity (RFC) to perform her past work as a clerk-typist. For the following reasons, we affirm in part, but vacate and remand for further proceedings in other respects.

## I.

On judicial review of a disability determination, a court "is limited to determining whether the [administrative law judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). In other words, "[t]he ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Id. It also is important to keep in mind that resolution of conflicts in the evidence and the ultimate determination of disability are for the ALJ, not the courts. Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

Here, the ALJ determined, at step four of the sequential evaluation process, that claimant retained the RFC to perform her past work. "At step four the initial burden is on the claimant to show that she can no longer perform her former work because of her

impairments." Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996) (per curiam). This initial burden requires the claimant to "lay the foundation as to what activities her former work entailed, [and to] . . . point out (unless obvious) -- so as to put in issue -- how her functional incapacity renders her unable to perform her former usual work." Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991) (per curiam). Once a claimant meets this initial burden, "the ALJ must compare the physical and mental demands of [the claimant's] past work with current functional capability." Manso-Pizarro, supra, 76 F.3d at 17.

## II.

### A. Claimant's Mental Condition

In relation to claimant's mental impairment -- severe depression -- we think that claimant met her initial burden in the step four process. Claimant testified that, due to her depression, she does not go out of her house for days or weeks at a time and that she just gives up on life and stays in bed. The medical evidence in the record also contains repeated references to claimant's (1) difficulties in attending medical appointments, (2) problems in following through with treatment plans, and (3) tendency to isolate herself by staying at home and sleeping during the day. Although claimant did not tie these particular limitations to her inability to perform her past job as a clerk typist, the connection is obvious.

In order to be considered mentally capable of performing <u>any</u> type of work, a claimant must be able to cope with certain demands. These demands include "the need to be punctual and to attend work on a regular basis, the ability to accept supervision and the capacity to remain in the work place for an entire day." <u>Irlanda Ortiz</u> v. <u>Secretary of Health and Human Services</u>, 955 F.2d 765, 770 (1st Cir. 1991) (per curiam). It certainly is arguable that someone who, at times, cannot leave her home due to her depression also is incapable of being punctual and attending work on a regular basis. We therefore think that claimant's limitations in this regard have sufficiently "put in issue . . . how her functional incapacity renders her unable to perform her former usual work." See <u>Santiago</u>, <u>supra</u>, 944 F.2d at 5.

The ALJ thus was obliged to "compare the physical and mental demands of [claimant's] past work with [her] . . . functional capability." <u>See</u> <u>Manso-Pizarro</u>, <u>supra</u>, 76 F.3d at 17. Obviously, in order to meet this requirement, an RFC assessment was necessary. However, the general rule is that an expert is needed to assess the extent of functional loss. <u>Id.</u> An ALJ may determine RFC only "[i]f th[e] evidence suggests a relatively mild . . . impairment posing, to the layperson's eye, no significant . . . restrictions." <u>Id.</u> at 17-18.

The medical evidence that the ALJ <u>did</u> consider here shows that certain of claimant's mental abilities <u>did</u> remain intact. Claimant consistently was described as being coherent, relevant, and

oriented; similarly, she never exhibited any thought disorders and her memory, when tested, always was preserved.  If this were the only evidence in the record regarding the extent of claimant's mental condition, then we think that the record would show a "relatively mild . . . impairment posing, to the layperson's eye, no significant . . . restrictions."  See Manso-Pizarro, supra, 76 F.3d at 17-18.  However, and as noted above, there was other evidence concerning the nature of claimant's mental impairment.

This evidence -- that claimant had difficulties with (1) maintaining attendance, (2) following through with a schedule, and (3) leaving her house when she is depressed -- was ignored by the ALJ.  Perhaps the reason for this omission was the assumption that the behavior reflected in the evidence was under claimant's control.  Indeed, the Commissioner's position on appeal is that claimant's problems arose from her non-compliance with treatment and not from her incapacity to get control of her impairments through treatment.

While the above position may be correct, we do not think that the ALJ was qualified to make an RFC assessment concerning the extent to which claimant's non-compliance with treatment was under her control and the extent to which, even assuming compliance with treatment, claimant's maladaptive behavior would cease. As we have stated, an expert's RFC evaluation is required where "the record . . . is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity

assessment." Manso-Pizarro, supra, 76 F.3d at 19.

Based on the foregoing, and viewing all of the evidence in the record as a whole, we think that the record indicates more than a mild impairment which imposes more than slight restrictions on claimant's mental ability to function. As a result, the ALJ was not permitted to make an RFC assessment, and an expert was required for this task. It thus follows that the ALJ's comparison of the demands of claimant's past work with her mental functional capacity, being based on an invalid RFC assessment, is not supported by substantial evidence.

The magistrate judge had quite a different reason for rejecting the claim of mental disability. And, on its face, this reason has substantial force. The magistrate judge stated that the plaintiff, based on her own testimony, failed to make the threshold showing that, because of mental disability, she was unable to perform her past relevant work. Specifically, she stated in the administrative hearing that she could not return to her prior job as a typist because she could not use her fingers or sit for long periods of time, problems which arose after the expiration of her injured status. These reasons were the only two given; she did not claim that her mental illness prevented her from returning to this job. By negative implication she could have been taken to have disclaimed such a connection.

However, this was not the interpretation for her testimony relied on by the ALJ. And, in this case the medical records showed

significant depression and plaintiff's testimony, if credited, raised serious questions about her ability to function in a regular job. We are therefore still satisfied that a remand is appropriate but, before ordering an RFC assessment, the ALJ is free as a precondition to require the plaintiff to clarify her answer; and, if she is not persuasively claiming that the depression precluded her return to work as a typist, obviously no RFC is required.

B. Claimant's Physical Condition

As for claimant's physical impairment, the ALJ found that she suffers from hemochromatosis, which is a disorder of the blood. At the hearing, claimant testified that, as a result of this condition, she could not perform her prior job as a clerk-typist. In particular, claimant stated that she could not type due to the problems she had with the joints of her fingers and that she could not sit for prolonged periods of time. As claimant points out, the diagnosis of hemochromatosis provides a medical basis for her complaints since one of the symptoms of this disease is joint pain.

The above sufficiently pointed out how claimant's "functional incapacity renders her unable to perform her former usual work." See Santiago, supra, 944 F.2d at 5. The ALJ thus was required to "compare the physical . . . demands of that past work with [claimant's] . . . functional capability." See Manso-Pizarro, supra, 76 F.3d at 17. The first question, as before, is whether the evidence showed only a "relatively mild physical impairment posing, to the layperson's eye, no significant . . . restrictions";

only in such a case would the ALJ himself be permitted to make the required RFC assessment.  See id. at 17-18.

We think that the ALJ here correctly determined that an expert was not required for the evaluation of claimant's physical RFC. Despite the undisputed diagnosis of hemochromatosis, the record indicates very few complaints of joint pain and no requests for treatment for this pain.  Further, in the physical examination conducted on September 28, 1995, the diagnoses did not include any reference to joint pain or arthritis.  And, as the ALJ pointed out, claimant was receiving treatment for her hemochromatosis.

Based on the record and on claimant's testimony, the ALJ decided that claimant was limited to lifting and carrying 10 pounds frequently and lifting and carrying 20 pounds occasionally. Because these are the only limitations the ALJ mentioned, it is plain that he implicitly was concluding that claimant's capacities for sitting, standing, and using her hands and fingers remained intact.  There is substantial evidence in the record to support this RFC assessment.

Claimant never specifically complained to any health care professional, during the relevant time, of pain in her fingers or of an inability to sit or stand.  Further, at the hearing, claimant stated that she had stopped working as a clerk-typist because the position had closed, not because she could not perform the physical demands of the job.  In this respect, we think that the ALJ correctly found that claimant's testimony regarding the problems

with the joints in her fingers and her inability to sit did <u>not</u> relate to the period before claimant's insured status had expired.

It thus appears that, as the ALJ concluded, claimant retained the physical RFC to perform her past work as a clerk-typist. Although claimant argues that the ALJ did not consider the specific demands of this kind of work in reaching this conclusion, claimant does not offer any information about the job demands that would raise a question about whether she had the physical capacity to perform the job. The ALJ's decision in regard to the impact of claimant's physical limitations on her ability to perform her past work therefore can be affirmed.

<u>III</u>.

The judgment of the district court is <u>vacated</u>, and the case is <u>remanded</u> with directions to remand to the Commissioner for further proceedings consistent with this opinion.