**Shawn BRAWDERS, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**Civil Action No. 2010–10194–RBC.[1]**

United States District Court, D. Massachusetts.

June 24, 2011.

---

1. On May 11, 2011, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 626(c).

Michael J. Kelley, Kenneth F. Langley, Law Office of Michael J. Kelley, Boston, MA, for Plaintiff.

Thomas D. Ramsey, Office of the General Counsel, Social Security Administration, Boston, MA, for Interested Party.

Rachael S. Rollins, United States Attorney's Office, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER ON MOTION TO REVERSE OR REMAND THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY (# 13) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (# 16)*

COLLINGS, United States Magistrate Judge.

## I. Introduction

On February 7, 2010, plaintiff Shawn Brawders ("Brawders") filed a complaint (# 1) pursuant to 42 U.S.C. § 405(g) against defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), appealing the denial of his claim for Supplemental Security Income ("SSI"). In May of 2010, the Commissioner filed an answer to the complaint (# 6), and then in September 2010 the transcript of the administrative record was filed. (# 10) The parties have filed cross-motions to resolve the plaintiff's claim, respectively seeking an order to reverse the Commissioner's decision (# 13) and an order to affirm the decision of the Commissioner. (# 16) The motions have been fully briefed (# # 14, 17) and stand ready for decision.

## II. Procedural Background

On September 22, 2006[2], Brawders filed an application for SSI alleging that he became disabled and unable to work as of March 26, 1997. (TR[3] at 169–174) The plaintiff's alleged disability resulted from "hepatitis C, hypertension, residuals of right ankle, right hip/pelvis and back fractures in the distant past, headaches and

---

**2.** There appears to be some discrepancy in the filing date. Documents reflect that the SSI application was filed on September 22, 2006 (TR at 169–174) while in his decision the ALJ consistently noted the filing date to be August 1, 2006. (TR at 100–113) This discrepancy is not material for present purposes.

**3.** The abbreviation "TR" refers to the administrative record.

depression/anxiety." (TR at 100) His application was denied both initially (TR at 84–86) and on review (TR at 91–96). Brawders requested a hearing before an administrative law judge ("ALJ"). (TR at 122–123) That hearing was held on June 9, 2008, with the plaintiff, his representative and a vocational expert in attendance. (TR at 54–83)

On June 30, 2008, the ALJ issued a decision wherein he found as follows: Brawders has not engaged in substantial gainful employment since August 1, 2006, the date his pending application for supplemental security income was protectively filed; since August 1, 2006, the claimant's affective, anxiety related and substance addiction disorders have imposed more than minimal impairment of his ability to engage in basic work related activities and thus constituted severe impairments as defined in Regulations No. 16 since said date; since August 1, 2006, the claimant's hepatitis C, hypertension, residuals of right ankle, right hip/pelvis and back fractures in the distant past and headaches have imposed more than minimal impairment of his ability to engage in basic work related activities, thus, these impairments have not been severe impairments as defined in Regulations No. 16 since said date; since August 1, 2006, the claimant has not had an impairment or combination of impairments that has met or medically equaled the requirements of listings 12.04 for affective disorders, 12.06 for anxiety related disorders, 12.09 for substance addiction disorders or any other listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; since August 1, 2006, the claimant has had the residual functional capacity to perform work at all exertional levels that could be done with the nonexertional limitations of being limited to work that is simple, routine, competitive, repetitive tasks on a sustained basis over a normal 8 hour work day, in a stable work environment, that involves no more than simple decision making, no close interpersonal interactions with coworkers, no significant interaction with the public, or require one to perform complex or detailed tasks; since August 1, 2006, the claimant has been capable of performing his past relevant work as a coating technician; and the claimant has not been under a disability, as defined in the Social Security Act, since August 1, 2006, the date his pending application for supplemental security income was protectively filed. (TR at 100–110)

On September 23, 2008, the Decision Review Board vacated the hearing decision and issued an order remanding the case to the ALJ for further proceedings. (TR at 112–113) The Board "received new evidence that addresses the claimant's limitations during the relevant period [that] was not ... considered by the" ALJ relating to a heart attack suffered by Brawders on June 23, 2008. (TR at 112) The Board was of the view "that there is a reasonable probability that this evidence alone, or when considered with the other evidence of record, would change the outcome of the decision." (TR at 112) The Board ordered the ALJ upon remand to:

> Obtain additional evidence concerning the claimant's cardiac (sic) in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912–913). The additional evidence shall include a consultative medical examination, by a board-certified cardiologist, if available, and a medical source statement about what the claimant can still do despite the impairment. Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 416.927(f) and Social Security Ruling 96–6p).

Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 85–16 and 96–8p).

TR at 113.

After remand, a second hearing was held on June 4, 2009, with the plaintiff, his representative and a vocational expert present. (TR at 21–51) Of particular note for present purposes, the ALJ stated in his opening remarks that the case

was sent by the proper (sic) review board on September 23rd, 2008 for additional development, including an additional hearing to obtain the additional evidence concerning the claimant's cardiac condition. He apparently had a heart attack in June, 2008, and has had a subsequent stint (sic) inserted, I believe in November, or stints (sic) inserted, November 2008. And I was required to go offer (sic) a consultative medical examination by a board certified cardiologist. We did get that. And that came back where the cardiologist indicated that the claimant was stage 2–B, which in my view is consistent with the ability to do light work.

TR at 23.

Discussing the report of the medical consultant, Dr. James Todd, the ALJ wrote that "Dr. Todd assessed coronary artery disease, New York Heart classification IIB.... NYHA class IIB would be consistent with the ability to perform at least light work." (TR at 14) When later formulating a hypothetical for the vocational expert the ALJ included the following criteria:

I am going to impose limitations because he has cardiac, Class 2–B, which is really by definition, cardiac Class 2. It means that the individual has slight limitations on physical activity. And minimal amount of disease, is the B criteria. So if he would have some discomforts we're going to limit him to light basically on that. The, the representative hasn't provided any precise functional assessment. And [Exhibit] 12–F [Physical RFC Assessment dated 01/26/2007] didn't indicate any physical or significant physical limitations previously. And we really don't have much to go on. But I'll assume that the two days (sic) at least consisted of light work.

TR at 48.

Based on the ALJ's hypothetical as a whole the vocational expert opined that Brawders would be able to perform both his past relevant work and other jobs in the regional economy. (TR at 49)

On June 11, 2009, Brawders filed a motion to amend the onset date of his alleged disability to March 15, 2009. (TR at 167–168)

On July 27, 2009, the ALJ issued his decision. (TR at 7–20) In significant part, the ALJ wrote:

The Appeals Council remanded the claim to obtain further evidence regarding the claimant's cardiac condition and the claimant amended the alleged onset date of disability to March 15, 2009, which supports a finding that he had no disabling significant cardiac limitations prior to that time. The claimant initially alleged disability since March 26, 1997; however, he subsequently amended the alleged onset date to March 15, 2009, which supports the Administrative Law Judge's previous decision in June 2008 that the claimant was not disabled.

TR at 17.

The ALJ made the following findings: Brawders has not engaged in substantial gainful activity since August 1, 2006, the application date, or March 15, 2009, the

amended alleged onset date of disability; the claimant has the severe impairments of a depressive disorder, an anxiety disorder, coronary artery disease status post a myocardial infarction with a successful angioplasty in June 2008 and November 2008, status post right ankle injury, a back disorder, headaches, Hepatitis C, hypertension, and poly substance abuse; the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except for occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, or scaffolds, a need to avoid extreme cold, and an ability to perform simple, routine, competitive, repetitive tasks on a sustained basis over a normal 8–hour workday, in a stable work environment, with no more that simple decision making, no significant close interpersonal interactions with co-workers, no significant interactions with co-workers, no significant interaction with the public, and no complex or detailed tasks; the claimant is capable of performing his past relevant works as a coding technician and sprayer; and the claimant has not been under a disability, as defined in the Social Security Act, since August 1, 2006, the date the application was filed. (TR at 7–20)

With the Decision Review Board having failed to complete its review within ninety days of the ALJ's July 27, 2009 decision, that decision became to final decision of the Commissioner. (TR at 1–3) Brawders has filed the instant lawsuit to appeal that final decision.

### III. The Standard of Review

Brawders is seeking review of the Commissioner's final decision pursuant to the Social Security Act § 205(g), 42 U.S.C.

§ 405(g) (the "Act"). The Act provides, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow ... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...

Title 42 U.S.C. § 405(g) (emphasis added).

The Court's role in reviewing a decision of the Commissioner under this statute is circumscribed:

> We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). The Secretary's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

*Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1 Cir., 1996) (per curiam); *see also Reyes Robles v. Finch*, 409 F.2d 84, 86 (1 Cir., 1969) ("And as to the scope of court review, 'substantial evidence' is a stringent limitation.").

The Supreme Court has defined "substantial evidence" to mean " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1 Cir., 1991). It has been explained that:

> 'In reviewing the record for substantial evidence, we are to keep in mind that issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary. The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.'

*Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1 Cir., 1981) (quoting *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1 Cir.1981)) (further citation and internal quotation marks omitted); *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1 Cir., 1981) ("In any event, whatever label the parties or the court ascribe to the procedure used to review the Secretary's decision, statute and long established case law make clear that the court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements." (citations omitted)).

In other words, if supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *Ward v. Commissioner of Social Security,* 211 F.3d 652, 655 (1 Cir., 2000); *see also Nguyen v. Chater,* 172 F.3d 31, 35 (1 Cir., 1999) (per curiam).

Lastly,

> Even in the presence of substantial evidence, however, the Court may review conclusions of law, *Slessinger v. Sec'y of Health & Human Servs.,* 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citing *Thompson v. Harris,* 504 F.Supp. 653, 654 [D.Mass.1980] ), and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts,' *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

*Musto v. Halter,* 135 F.Supp.2d 220, 225 (D.Mass., 2001).

### IV. Discussion

The plaintiff challenges the Commissioner's decision on a single ground. Specifically, the ALJ is said to have committed an error when he found that the cardiologist's diagnosis that Brawders has coronary artery disease, New York Heart classification IIB, meant that the plaintiff has the ability to perform light work.[4]

---

4. Light work under the regulations is defined as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

Because the ALJ did not "support this conclusion with a medical opinion or supporting treatise," and because " 'as a lay person, the ALJ [is] simply not qualified to interpret raw medical data in functional terms,' " it is argued that reversible error has been committed. (# 14 at 11 (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1 Cir., 1999) (per curiam)))[5] The Court agrees.

The only Physical RFC Assessment listed amongst the exhibits in this case is one completed by Janet Leaver, DO, a non-examining source, on January 26, 2007. (TR at 437–444) Although Dr. Leaver found that no exertional, postural, manipulative, visual, communicative, or environmental limitations had been established (TR at 438), this Physical RFC Assessment predates Brawders' cardiac events of June and November, 2008 by about eighteen months or more, and so sheds no light on the plaintiff's subsequent physical residual functional capacity.

The record reflects that on June 23, 2008, Brawders suffered an acute inferior, lateral myocardial infarction.[6] (TR at 583) A balloon angioplasty was performed by Jonathan Bier, M.D., and the plaintiff was discharged from the hospital with medications three days later, "hemodynamically stable and angina free ... [with no] symptoms of chest pain, shortness of breath, dizziness, right groin or abdominal pain." (TR at 583–585) At a June 30, 2008 follow-up appointment, Dr. Bier reported that the plaintiff had "[n]o chest pain, no rapid heart rate, no palpitations, no ankle, edema, no PND." (TR at 600) Although Brawders had not received a stent, Dr. Bier stated that "he should have plavix given severe cad." (TR at 601)

The plaintiff presented at the emergency room on August 29, 2008 with "the sudden onset of mid chest pain" for which he took two nitroglycerins which afforded some relief. (TR at 610) He was admitted to the hospital for cardiac monitoring and ultimately discharged on August 31, 2008. (TR at 610–613)

At a follow-up visit with Dr. Bier on September 9, 2008, Brawders denied any chest pain since his hospital admission, and he continued to have no rapid heart rate, palpitations, ankle edema or PHD. (TR at 629) At a November 17, 2008 appointment with Dr. Bier, the plaintiff reported "having occasional chest pain, mostly at rest

these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 CFR § 404.1567.
Sedentary work, on the other hand, is defined as:
(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567; *see also* SSR 83–10: Titles II and XVI: Determining Capability To Do Other Work.

5. Brawders argues that he is only capable of performing sedentary work rather than light work as determined by the ALJ. This difference is significant because if, in fact, the plaintiff can only perform at the sedentary level, under the Grid he would be disabled. (# 14 at 11–12) The Court expresses no view on the sedentary versus light work issue precisely for the reason this case must be remanded: it is not a decision that can be made by a layperson without an expert's RFC assessment.

6. Only the medical evidence regarding the plaintiff's cardiac impairment shall be related.

although sometimes with exertion," although he felt okay with walking. (TR at 628) Dr. Bier continued Brawders' medication therapy and scheduled a three-month follow-up appointment. (TR at 628)

On November 21, 2008, Dr. Bier performed an interventional cardiac catheterization on the plaintiff and inserted two drug eluding stents. (TR at 669–671) The procedure was successful and Brawders was to continue taking plavix. (TR at 670)

On December 2, 2008, Brawders underwent a consultative examination with Dr. M. Anis Rahman. (TR at 603–605) According to the report, the plaintiff related that he had "been experiencing intermittent chest pain, mostly on exertion, on average of 3–4 times a week" and that "[u]sually the chest pain is relieved by nitroglycerine." (TR at 603) Further, "[t]he patient has been experiencing shortness of breath for the last six months . . . mostly on exertion, such as climbing stairs or doing a lot of physical work." (TR at 603) Dr. Rahman's impression was "[c]oronary heart disease status post angioplasty with stenting x2. The patient continues to experience occasional chest pain." (TR at 605)

At a nurse visit on January 29, 2009, the plaintiff denied any chest pain/chest discomfort, palpitations, dizziness, blurred vision, light headedness or headache, but complained about shortness of breath with regular activity. (TR at 654)

In his consultative examination report dated February 9, 2009, Dr. Todd recorded that Brawders had "[c]oronary artery disease with a history of cardiac stent." (TR at 666) As of February 2009, the plaintiff had "chest pressure or tightness twice a week. He uses two nitroglycerins/week.

He gets prompt and immediate response from his nitroglycerin. He has not had a post stenting exercise tolerance test, and this is indicated to assess his current functioning."[7] (TR at 666)

At the time of the consultative examination, the plaintiff was "attending classes four hours daily" to become an alcohol and drug counselor. (TR at 667) Brawders reported to Dr. Todd that "[h]e can sit for one hour before he becomes fidgety. He can stand for 45 minutes before he becomes fidgety. He can pick up and carry 20 pounds with either hand. He can walk for 1/4 mile but he has to stop and rest." (TR at 667) Upon examination, Dr. Todd found Brawders' heart to have normal S1, S2 with no cardiac murmur. (TR at 668) His diagnoses included "[c]oronary artery disease, New York Heart classification IIB" and "[s]ymptomatic angina, bruits 2x/week." (TR at 668)

Subsequent medical records from Brockton Neighborhood Health Center indicate that on a March 30, 2009 visit to his new primary care physician, the plaintiff indicated that "[h]e currently has no complaints of CP, dyspnea or fatigue." (TR at 707) The doctor diagnosed "[c]hronic ischemic heart disease, unspecified." (TR at 708) At a visit on April 6, 2009, Brawders again reported "[n]o complaints of chest pain, dyspnea." (TR at 710) At a follow-up appointment for his coronary artery disease on May 8, 2009, Brawders denied having chest pain, dyspnea or heart palpitations and stated that he was tolerating his medications well. (TR at 715)

Given this state of the record *vis-a-vis* the plaintiff's heart condition, to paraphrase the ALJ, there really is not much to go on with respect to Brawders' physi-

---

7. There is no indication in the record that this post-stenting stress test to assess Brawders' functioning has taken place.

cal residual functional capacity. Although the Decision Review Board directed that on remand "a medical source statement about what the claimant can still do despite the [heart] impairment" be obtained, it does not appear from the record that this was accomplished.

The First Circuit has determined that:

The ALJ ... was obliged to 'compare the physical and mental demands of [claimant's] past work with [her] ... functional capability.' *See Manso–Pizarro [v. Secretary of Health and Human Services ], supra,* 76 F.3d [15,] 17 [ (1 Cir., 1996) ]. Obviously, in order to meet this requirement, an RFC assessment was necessary. However, the general rule is that an expert is needed to assess the extent of functional loss. *Id.* An ALJ may determine RFC only '[i]f th[e] evidence suggests a relatively mild ... impairment posing, to the layperson's eye, no significant ... restrictions.' *Id.* at 17–18.

\*　　\*　　\*　　\*　　\*　　\*

As we have stated, an expert's RFC evaluation is required where 'the record ... is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment.' *Manso–Pizarro, supra,* 76 F.3d at 19.

*Roberts v. Barnhart,* 67 Fed.Appx. 621, 622–623 (1 Cir., 2003) (per curiam); *Nguyen v. Chater,* 172 F.3d 31, 35 (1 Cir., 1999) (per curiam) ("The Commissioner suggests that despite Dr. Mahoney's opinion, the medical record supported the ALJ's determination that claimant was fully capable of performing sedentary work. As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Perez v. Secretary of Health and Human Services,* 958 F.2d 445, 446 (1 Cir., 1991) (per curiam) ("We have held, accordingly, that where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence."); *Berrios Lopez v. Secretary of Health and Human Services,* 951 F.2d 427, 430 (1 Cir., 1991) (per curiam) ("Since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess claimant's residual functional capacity based on the bare medical record."); *Gordils v. Secretary of Health and Human Services,* 921 F.2d 327, 329 (1 Cir., 1990) (per curiam) (same); *Beyene v. Astrue,* 739 F.Supp.2d 77, 83 (D.Mass., 2010) (same).

Essentially the ALJ appears to have concluded that Brawders had the residual functional capacity to perform light work based on Dr. Todd's diagnoses of New York Heart classification IIB.[8] The New York Heart Association functional classification system is used by physicians to assess a patient's stage of heart failure. Heart Failure Society of America, *http://www.abouthf.org/questions_stages.htm.* This classification system "places patients in one of four categories based on how much they are limited during physical activity." American Heart Association,

---

**8.** Dr. Todd also diagnosed the plaintiff with "[s]ymptomatic angina, bruits 2x/week." (TR at 668) What effect, if any, that diagnosis has on Brawders' physical residual functional capacity is unknown. Acknowledging that the plaintiff did not complain of chest pain or palpitations during his primary care appointments in March, April and May, 2009, it is notable that Brawders was even being followed that closely at the Brockton Neighborhood Health Center.

http://www.heart.org/HEARTORG/ Conditions/HeartFailure/AboutHeart Failure/Classes–of–Heart–Failure_UCM_ 306328_Article.jsp. In the Class II category, a patient feels "[m]ild symptoms and slight limitation during ordinary activity [and is] [c]omfortable at rest." American Heart Association, http://www.heart.org/ HEARTORG/Conditions/HeartFailure/ AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp; http:// americanheart.org/presenter.jhtml? identifier=4569 ("Class II. Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain."); Heart Failure Society of America, http://www.abouthf.org/ questions_stages.htm (The patient symptoms associated with Class II are "[s]light limitation of physical activity. Comfortable at rest, but ordinary physical activity results in fatigue, palpitation, or dyspnea.").

As a layperson, the ALJ was not qualified to translate the general Class II criteria into an actual physical functional residual capacity. Dr. Todd indicated that a post-stent exercise tolerance test was required "to assess [Brawders'] current functioning." (TR at 666) Further, while the medical records from Brockton Neighborhood Health Center generally indicate that during the three months period from March–May, 2009, the plaintiff was reporting no chest pain, dyspnea or heart palpitations (TR at 707–710), these records do not address the issue of physical functional residual capacity.

In sum, evaluation of this record "requires more than a layperson's effort at a commonsense functional capacity assessment." Roberts, 67 Fed.Appx. at 623. As noted, supra, Doctor Todd, in his report of examination of February 9, 2009, indicates

that a "post stenting exercise tolerance test ... is indicated to assess his current functioning ...". (TR. at 666; emphasis supplied) Manifestly, the doctor thought that more than the plaintiff's reports of his condition was necessary to determine his "functioning." Thus, the Commissioner's argument that the plaintiff's report of symptoms (or lack thereof) at medical appointments after the placing of the stents provides sufficient support for the ALJ's conclusion as to the plaintiff's ability to perform in an employment setting is not persuasive. As the Decision Board indicated upon remand, it was necessary to "obtain additional evidence" which "shall include ... a medical source statement about what the claimant can still do despite the impairment." (TR at 113) Without the medical source statement as to the claimant's ability to function, substantial evidence for the ALJ's subsequent finding that the claimant can do light work is lacking. An expert medical opinion providing further functional evidence must be obtained in order properly to determine Brawder's physical residual functional capacity.

## V. Conclusion

For the reasons stated, it is ORDERED that the Motion To Reverse Or Remand The Decision Of The Commissioner Of Social Security (# 13) be, and the same hereby is, ALLOWED to the extent that a remand will be ordered. It is FURTHER ORDERED that Defendant's Motion For Order Affirming The Decision Of The Commissioner (# 16) be, and the same hereby is, DENIED. Final judgment shall enter REMANDING this case to the Commissioner for further proceedings in accordance with this memorandum and order.