**Nickhlas SIMPSON, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

Civil Action No. 12–11435–RBC.[1]

United States District Court, D. Massachusetts.

March 10, 2014.

---

1. With the parties' consent, this case has been reassigned to the undersigned for all pur- poses, including trial and the entry of judg- ment, pursuant to 28 U.S.C. § 636(c). (# 21).

Nickhlas Simpson, Dorchester, MA, pro se.

Christine J. Wichers, United States Attorney's Office MA, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND THE DECISION OF THE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION (# 29) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (# 39)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On August 3, 2012, Winsome Williams ("Williams") filed a complaint (# 1) on behalf of her son against then Commissioner of Social Security, William J. Astrue[2]. Three days later on August 6, 2012, the complaint was amended (# 3) to name Williams' son, Nickhlas Simpson ("Simpson"), as the party-plaintiff. Simpson alleges that he has been adversely affected by the defendant's decision denying his application for Supplemental Security Income ("SSI"). On March 29, 2013, an answer to the complaint (# 14) was filed and, on April 1, 2013, the administrative record of the social security proceedings (# 16) was submitted.

On July 15, 2013, the plaintiff filed a motion (# 29) to reverse or remand the decision of the Commissioner together with a memorandum of law (# 30). Thereafter, following an extension of time and a stay, on November 18, 2013, the defendant filed a motion (# 39) for an order affirming the decision of the Commissioner, together with a separate memorandum of law (# 40). On December 3, 2013, the plaintiff filed a reply memorandum. (# 42)[3]

At this juncture, the record is complete and the cross-motions stand ready for decision.

### II. Procedural Background

On June 21, 2005, Simpson filed a Title XVI application for Supplemental Security Income. (TR at 28–34)[4] The claim was initially denied on August 21, 2005, and again upon reconsideration on December 31, 2005. (TR at 36–39, 43–45) On January 4, 2006, Simpson submitted a request for a hearing before an administrative law judge ("ALJ"); the hearing was subsequently held on October 26, 2006. (TR at 46–47, 320–388) The plaintiff attended the hearing, accompanied by his attorney. (TR at 322) Simpson testified at the administrative hearing, as did his mother and

2. On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration and so, pursuant to Fed.R.Civ.P. 25(d), has been substituted for Michael J. Astrue as the defendant in this action.

3. Docket # 41 and # 42, both filed on December 3, 2013, are substantively the same. Docket # 42 includes a certificate of service.

4. The designation "TR" refers to the administrative record. (# 16).

an impartial medical expert. (TR at 325–388).

On January 26, 2007, the ALJ issued his decision finding that Simpson was not disabled within the meaning of the Social Security Act (the "Act") and, consequently, denied his claim. (TR at 17–27) In that decision, the ALJ determined, *inter alia,* 1) that Simpson was an adolescent at the time the application was filed and at the time the decision issued (TR at 20); 2) Simpson had "not engaged in substantial gainful activity at any time relevant to th[e] decision" (TR at 20); 3) that Simpson "has the following severe impairments: ADHD and learning disabilities" (TR at 20); 4) that Simpson "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (TR at 20); 5) that Simpson "does not have an impairment or combination of impairments that functionally equals the listings" (TR at 20); and 6) that Simpson "has not been disabled" within the meaning of the Act since June 21, 2005. (TR at 26).

The plaintiff appealed the ALJ's unfavorable decision to the Appeals Council on March 19, 2007. (TR at 12) On August 2, 2007, the request for review was denied by the Appeals Council. (TR at 5–8) The Appeals Council's action had the effect of establishing the ALJ's decision as the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

On October 1, 2007, the plaintiff filed a complaint in the United States District Court for the District of Massachusetts in Boston seeking judicial review. (# 1, *Williams v. Astrue,* Civil Action No. 2007–11865–NG) On September 30, 2009, Judge Nancy Gertner issued an order vacating the decision of the ALJ and remanding the case for further consideration of the claimant's application for benefits. (TR at 423–439) On November 5, 2009, the Appeals Council vacated the ALJ's decision and the case was remanded back to the ALJ with instructions "for further proceedings consistent with the order of the court." (TR at 442).

A new hearing was held before the same ALJ on April 29, 2010. (TR at 607–689) The plaintiff attended the hearing, accompanied by his attorney. (TR at 607, 609) Simpson testified at the administrative hearing, as did his mother and an impartial medical expert. (TR at 612–688).

On June 25, 2010, the ALJ issued his decision, again finding that Simpson was not disabled within the meaning of the Social Security Act and, consequently, denied his claim. (TR at 396–408) In that decision, the ALJ determined, *inter alia,* 1) that the plaintiff "was a school-age child on June 21, 2005, the date [his SSI] application was filed, and is currently an adolescent" (TR at 399); 2) Simpson had "not engaged in substantial gainful activity since June 21, 2005, the application date" (TR at 399); 3) that Simpson "has the following severe impairments: attention deficit hyperactivity disorder (ADHD) and learning disability" (TR at 399); 4) that Simpson "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (TR at 399); 5) that Simpson "does not have an impairment or combination of impairments that functionally equals the listings" (TR at 401); and 6) that Simpson "has not been disabled, as defined by the Social Security Act, since June 21, 2005, the date the application was filed." (TR at 408).

The plaintiff appealed the ALJ's unfavorable decision to the Appeals Council on July 26, 2010. (TR at 421) On June 4, 2012, the request for review was denied by the Appeals Council. (TR at 389–392) The

Appeals Council's action had the effect of establishing the ALJ's decision as the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). On August 3, 2012, the present litigation was instituted.

### III. The Facts

Simpson is a nineteen-year-old who suffers from attention deficit hyperactivity disorder ("ADHD") and learning disabilities. (TR at 20) According to his treating psychologist, he also likely suffers from Pervasive Development Disorder ("PDD"). (TR at 198) Plaintiff was prescribed, and consistently took,[5] medication for his ADHD during all relevant time periods. (TR at 66, 105, 238, 309, 563, 568, 569, 574).

Since 2005, Simpson treated with Dr. Allison Schonwald through the Advocation for Successful Kids Program ("ASK"), a program at Children's Hospital "which provides services for children with emotional, behavioral, and/or learning delays." www.childrenshospital.org/about-us/core-community-community-health-issue-areas/mental-health. (TR at 66–7, 563, 568, 597) Plaintiff has had an Individualized Education Plan ("IEP") since the fifth grade following a formal testing determination that he was "elligible (sic) for special education services." (TR at 177–183) For four years (2005–2009), as part of these special education services, Simpson attended smaller classes in accordance with his IEPs. (TR at 206, 221, 477, 500).

In 2005, Simpson's reading test results were only at the 2nd percentile, (TR at 261), and his math results were only at the 5th percentile (TR at 262). Also in 2005,

the summary of the WJ III Tests of Achievement revealed that Simpson's

English oral expression skills are very low; his English listening comprehension skills are low. His fluency with academic tasks is average. Nickhlas's academic knowledge and skills, and his ability to apply academic skills, are all within the low average range.

When compared to others at his grade level, Nickhlas's performance is average in math calculation skills and math reasoning; and low average in broad reading, basic reading skills, reading comprehension, basic writing skills, and written expression. His knowledge of phonemegrapheme relationships is low. When his achievement areas are compared, he demonstrated a significant weakness in oral expression.

TR at 163.

He was reported at this time to be performing two grade levels below his actual level. (TR at 186) Simpson was found to need a "highly structured environment that can support his reading and writing weaknesses," as well as "constant attention to complete his tasks." (TR at 187)

In 2006, while the plaintiff was in the sixth grade, based on the Connors' Teacher Rating Scale the following criteria, among others, were "very much true" about Simpson: defiant, restless in the squirmy sense, feelings easily hurt, temper outbursts, excitable, impulsive, fails to give close attention to detail, is always on the go, has difficulty engaging in tasks that require sustained mental effort, restless or overactive, does not seem to listen, actively defies, leaves seat, poor in spelling, fails to

---

5. An August 20, 2008 note from Children's Hospital reflects that prior ADHD medications had proven unhelpful and, while the plan was "to try a new medication," at the time of the visit the plaintiff was "currently not taking any medication." (TR at 574)

There is also a December 28, 2009 note from Dr. Schonwald indicating that for a period of time the plaintiff "was not taking his medication," but that "things have improved." (TR at 563).

finish things he starts, cries often and easily, has difficulty organizing tasks or activities, has difficulty sustaining attention in tasks or play activities, cannot remain still, short attention span, loses things necessary for tasks or activities, easily distracted by extraneous stimuli, among others. (TR at 196–97).

Simpson was found to require the following accommodations during the 2006–2007 school year in order to make effective progress: "extra time to complete work, clarified directions, directions in small steps, examples, simplified directives, manipulatives, cueing back to task, [and] behavior management." (TR at 215) His performance in math and language arts "are at least three or more years below grade level." (TR at 222) Despite the provisions of the IEPs and regularly administered ADHD medication, Simpson continued to exhibit behavioral problems and was suspended several times during the 2005, 2006, and 2007 school years. (TR at 275–306, 547–549).

In 2007, Simpson completed a Wechsler Abbreviated Scale of Intelligence (WASI) test which determined his Verbal IQ to rank in the 14th percentile (low average), his Performance IQ to rank in the 58th percentile (average), and his Full Scale IQ to rank in the 30th percentile (skewed). (TR at 533–534) Simpson also completed the Clinical Evaluation of Language Fundamentals, Fourth Edition in 2007, an examination "which evaluates the expressive and receptive language skills required in a language based environment as found within the classroom." (TR at 538) *Inter alia,* the plaintiff tested in the 5th percentile in concepts and directions, the 75th percentile in formulated sentences, the .4th percentile in understanding spoken paragraphs, the 32nd percentile in expressive language, and the 21st percentile in language memory. (TR at 539–544) Based on

this clinical evaluation, it was recommended that Simpson would continue to benefit from "a smaller class with higher teacher to student ratio to afford him with more teacher support." (TR at 544)

In the 2007–2008 school year Simpson attended Gavin Middle School for eighth grade. (TR at 512–530) Due to poor and failing grades, Simpson was required to repeat the eighth grade at Breed Middle School in Lynn. (TR at 526, 624–25) In the 2009–2010 school year, the plaintiff attended Lynn Classical High School and lived with his father. (TR at 615–627) Simpson attended regular classes at Lynn Classical High School, but he did not do well, getting "[b]ad grades, getting into trouble, getting suspended." (TR at 616).

At the time of the April 2010 hearing, Simpson was a fifteen-year-old in the ninth grade living with his mother in Boston. (TR at 613–615) He was attending Brighton High School where he was repeating the ninth grade. (TR 615)

To recap the medical opinions in the record, Dr. Allison Schonwald, the physician who treated the plaintiff in the ASK Program, found in January 2005 that Simpson was doing well in a regular classroom while on his medication. (TR at 109) In November of 2005, however, his mother reported that Simpson was having difficulty falling asleep, so his medication was changed. (TR at 107) In 2006, Dr. Schonwald stated Simpson had "periods of school success and well maintained behavior, marked by periods of more trouble" and furthermore "has a long history of trouble sitting still, paying attention, and controlling his impulses." (TR at 307–308) Dr. Schonwald's impression was that the plaintiff was "a 12 year old with ADHD and learning disabilities who is having behavioral difficulties in school that seem due to peer difficulties." (TR at 308).

In a February 2007 follow-up appointment, Dr. Schonwald noted that the plaintiff, then a seventh-grader, had been suspended about seven times that school year. (TR at 586) Dr. Schonwald reiterated that Simpson "needs a small classroom for children with learning disabilities." (TR at 586) In May of 2007, Dr. Schonwald reported that Simpson displayed "some immature behavior, given his solid cognitive testing, [Dr. Schonwald] think[s] this is more a developmental lag rather than a disorder representative of a more concerning issue." (TR at 582) Her impression was that the plaintiff was "a 12–1/2 year-old seventh grader with ADHD and learning disabilities mostly in reading, who is responding well to an increased does of ADHD medication, but requires more intensive services in order to succeed in school." (TR at 582).

In October 2008, Dr. Schonwald noted that Simpson was then fourteen years of age, repeating eighth grade. (TR at 573) The plaintiff had moved and was "on a better path." (TR at 573) The Lynn public school where he was then attending was "shock(ed) about his behavior in the past given the child they see before them" as Simpson "rather than failing [was] earning Cs and Ds." (TR at 573) At the end of December 2009, Simpson was still attending school in Lynn and, although for a period of time he "not taking his medication" ... "things [had] improved." (TR at 563) Dr. Schonwald was of the view that Simpson was "barely passing some classes, having some typical adolescent behaviors at home. He has both adolescence and 12 initial years of living without rules or expectations that combine to drive his current behavioral challenges." (TR at 563).

Dr. J. Kellerman, a state agency psychologist who reviewed Simpson's records in August 2005, concluded that Simpson had ADHD but that it was not a "severe impairment." (TR at 94) Dr. Kellerman stated the belief that the claimant's function has "normalized in (his) new setting" with "no difficulty functioning in regular classes since 1/05." (TR at 99)

Dr. Nancy Keuthen, a state agency psychologist who reviewed Simpson's records in December 2005, concluded that Simpson's impairment or combination of impairments were severe, but did not meet, medically equal, or functionally equal the listings. (TR at 118) Furthermore, Dr. Keuthen concluded that Simpson had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. (TR at 120).

Dr. Robert Azrak, a psychologist at Massachusetts Bay Counseling, met with Simpson a number of times in early 2006 on a weekly basis. (TR at 198, 247–251) On March 23, 2006, Dr. Azrak stated that Simpson appeared to be "severely developmentally delayed in several areas, cognitive, emotional, and social, which indicates that the (sic) diagnosis of Pervasive Developmental Disorder." (TR at 198) Dr. Azrak concluded that he "wish[ed] to support [Simpson's] application, and recommend[ed] that he receive the benefits." (TR at 198).

Dr. Jay Orson, a pediatrician, testified as a medical expert at the 2006 hearing. (TR at 370–386) Dr. Orson found that there was a "big disparity" between the testimony at the hearing and the record and stated that "the way to get a picture overall is to see what his report card is." (TR at 372–373) Dr. Orson testified that the plaintiff "certainly has problems learning. The question is whether they're of a level to be a marked impairment, or, or just an impairment. You'll have to have a marked impairment. And again, I think the report cards will be helpful." (TR at

375) Dr. Orson believed that Simpson did not meet overall marked difficulty while on medication, but that the report cards would be helpful in making a final determination. (TR at 372–376).

Dr. William Silberberg testified as a medical expert at the 2010 hearing. (TR at 658–688) Dr. Silberberg stated that

> With the evidence presented, that the impairment or combination of impairments, meets the first part of this listing, i.e., he has marketed (sic) attention, marked impulsiveness, and he has marked hyperactivity. Now, where are we—but, in total, the combination of impairments is less than marked and does not meet the second part and does not medically equal or functionally equal the listing of 112.11, I believe it is.

TR at 662–663.

Dr. Silberberg testified that the plaintiff met Part B of the listing in that he had marked difficulties "in terms of maintaining concentration, persistence or pace," but no marked difficulties with respect to other factors under Part B. (TR at 663–664).

### IV. The Standard of Review

■ Title 42 U.S.C. § 405(g) provides, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow ... The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .

The Court's role in reviewing a decision of the Commissioner under this statute is circumscribed:

> We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' *Sullivan v. Hudson,* 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). The Secretary's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

*Manso–Pizarro v. Secretary of Health and Human Services,* 76 F.3d 15, 16 (1 Cir., 1996) (per curiam); *see also Reyes Robles v. Finch,* 409 F.2d 84, 86 (1 Cir., 1969) ("And as to the scope of the court review, 'substantial evidence' is a stringent limitation.").

■ The Supreme Court has defined "substantial evidence" to mean " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1 Cir., 1991). It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that 'issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.' The Secretary may (and,

under his regulations, must) take medical evidence. But the resolution of the conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

*Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1 Cir., 1981) (quoting *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1 Cir., 1981)); *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1 Cir., 1981) ("In any event, whatever label the parties or the court ascribe to the procedure used to review the Secretary's decision, statute and long established case law make clear that the court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements." (Citations omitted)).

 In other words, if supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *Ward v. Commissioner of Social Security,* 211 F.3d 652, 655 (1 Cir., 2000); *see also Nguyen v. Chater,* 172 F.3d 31, 35 (1 Cir., 1999) (per curiam). Lastly,

Even in the presence of substantial review, however, the Court may review conclusions of law, *Slessinger v. Sec'y of Health & Human Servs.,* 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citing *Thompson v. Harris,* 504 F.Supp. 653, 654 [D.Mass.1980] ), and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts,' *Ngu-*

*yen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

*Musto v. Halter,* 135 F.Supp.2d 220, 225 (D.Mass., 2001).

## V. Discussion

In her September 30, 2009 Memorandum and Order Remanding Case, Judge Gertner found the ALJ's 2007 decision to be deficient in numerous respects. (TR at 423–439) In general terms, Judge Gertner concluded that remand was warranted for two reasons:

First, the ALJ concluded that [plaintiff's] impairments did not meet or medically equal the listed criteria with no analysis at all, choosing to focus exclusively on whether [plaintiffs] condition functionally equaled the ADHD listing. Second, the ALJ's opinion does not permit the Court to determine whether his determination that [plaintiff's] impairments did not functionally equal the listing for ADHD was based on substantial evidence.

TR at 427.

More specifically, Judge Gertner concluded that while it is true a claimant bears the burden of showing that he meets or equals a listed impairment, "[plaintiff] provided medical documentation, school records, test scores, and testimony that constitute substantial evidence in support of his claim. The ALJ failed to analyze this evidence under the detailed agency regulations that govern disability benefits." (TR at 429) The Court determined that it was an error of law for the ALJ to find that the plaintiff "did not meet or medically equal the listed criteria without even discussing the criteria to be applied." (TR at 429).

With regard to the "functionally equals" element of the inquiry, Judge Gertner found that the ALJ's "analysis of the facts in the record was inadequate to enable

effective judicial review, and his findings fail to address substantial evidence that supports [plaintiff's] eligibility for benefits." (TR at 430) In particular, despite the ALJ's statement "in his opinion that he had 'considered all of the opinion evidence, consistent with 20 C.F.R. 416.927,' ... he failed to explain his analysis of the differing medical opinions sufficiently clearly to enable effective review." (TR at 432) The ALJ was said to have "cited Dr. Schonwald's reports in an incomplete and selective way" (TR at 433); "The ALJ was required to explain how he resolved the tension between Dr. Schonwald and Dr. Orson's opinions and why he assigned more weight to the latter-a non-treating physician 20 C.F.R. § 416.927(d)." (TR at 434) The ALJ did not address the letter from the plaintiff's treating psychologist, Dr. Azrak, which was "inappropriate." (TR at 435) Judge Gertner found that the ALJ should have considered "the combined effects of PDD and ADHD ... in the functional equivalence analysis." (TR at 435).

Although the ALJ mentioned the results of some of the plaintiff's standardized tests, he "did not discuss any of them in his analysis of the domains." (TR at 435) Significantly, "the ALJ failed to address an October 2004 report from the Boston Public Schools indicating that [plaintiff] tested in the fifth percentile for math and in the second for reading." (TR at 435) Because the reading score result "suggests a marked impairment,"

On remand, the ALJ should address (1) whether the score was valid, (2) whether the test constitutes a comprehensive standardized test designed to measure ability or functioning within the relevant domain, and (3) whether [plaintiff's] day-to-day functioning in domain-related activities is consistent with the score. The ALJ should also examine other testing, [plaintiff's] grades, reports from teachers, testimony from [plaintiffs] mother, and all medical evidence to determine whether they support the validity and reliability of this score.

TR at 436.

Regarding the domain of acquiring and using information, Judge Gertner reiterated that the ALJ "did not adequately address standardized testing" *vis-a-vis* this issue, nor did he discuss any of the plaintiff's report cards. (TR at 436–37) Moreover, "[t]he ALJ erred in that he failed to consider [plaintiff's] 'ability to function in a regular classroom ... with children ... who do not have impairments are required by 20 C.F.R. § 416.924a(b)7(iv), or [plaintiff's] 'need for a structured setting and the degree of limitations in functioning [he] would have outside the structured setting' as required by 20 C.F.R. § 416.924a(b)(5)(iv)." (TR at 437) Judge Gertner noted that "[t]he ALJ failed to discuss how his analysis was affected by the fact that [plaintiff] received a number of accommodations and received much of his education in a structured setting under Individualized Education Plans." (TR at 437) The ALJ was directed on remand to "elaborate on how these considerations informed his determination." (TR at 437).

With respect to the domain of attending and completing tasks, Judge Gertner wrote that "[t]he ALJ's opinion does not address the substantial evidence in the record that supports significant impairment on these measures." (TR at 438) The Judge specifically observed the ALJ's failure to discuss the plaintiff's March 2005 educational assessment performed by the Boston Public Schools, which report reflected that the plaintiffs "disability results in difficulties with comprehension, recalling/retelling stories, following oral directions, and concentrating"; that the plaintiff needed accommodations including

" 'clarified instructions, directions in small steps, examples, demonstrations, visual cues, preferential seating, [and] extra time to process and respond to information' "; that the plaintiff "needs a 'highly structured environment' in which he can receive 'constant attention to complete his tasks' "; and that the school staff should both "preview and review his assignments with him and that he be given frequent breaks to 'enable him to refocus on his tasks.' " (TR at 438 (internal citations omitted)) Judge Gertner indicated that "[t]hese needs should be addressed on remand." (TR at 438)

Lastly, Judge Gertner found that the ALJ's analysis on the domain of interacting and relating with others "simply did not support his conclusion." (TR at 438) While the ALJ recognized the plaintiffs "significant behavioral problem," he offered no explanation for his conclusion that the plaintiff's problems did not constitute a marked or extreme limitation. Judge Gertner ordered that "[o]n remand, the ALJ should consider this evidence [about the plaintiffs significant behavioral problem] or detail how he arrived at his conclusion." (TR at 438).

Judge Gertner ordered that "[t]he decision of the ALJ [be] vacated, and the matter [be] remanded for further proceedings consistent with this opinion." (TR at 439).

After the case was remanded to the Commissioner of Social Security, the Appeals Council in turn remanded the case to the ALJ "for further proceedings consis-tent with the order of the court." (TR at 442).

■ A review of the 2010 decision reveals that the ALJ patently failed to follow Judge Gertner's directions on remand. Regarding whether Simpson had an impairment or combination of impairments that meet or medically equal one of the listed impairments, the ALJ did discuss the relevant criteria in the 2010 decision.[6] Although the "B" criteria were addressed, the review of evidence was cursory and deficient. The same must be said with respect to the analysis of whether the plaintiff had an impairment or combination of impairments that functionally equals the listings.

The ALJ did not discuss all of the medical opinions as ordered, nor did he explain his analysis of the differing medical opinions. The ALJ relied solely on a December 28, 2009 report of Dr. Schonwald and the testimony of the medical expert from the hearing. No reference was made to the report from Psychological Services at the Boston Public Schools, the evaluations of Drs. Kellerman and Keuthen, the letter from Dr. Azrak or the numerous additional reports and progress notes from Dr. Schonwald.[7]

Judge Gertner was specific in requiring the ALJ to discuss more fully the results of the plaintiff's standardized testing, including the October 2004 report from the Boston Public Schools and the March 2005 educational assessment by the Boston Public Schools, as well as his report cards. This the ALJ did not do. Apart from briefly mentioning that Simpson was re-

---

**6.** The ALJ did not engage in a lengthy discussion with respect to the "A" criteria as he agreed that the "A" criteria set forth in Listing 112.11 had been met given the plaintiff's "ADHD ... accompanied by marked inattention, marked compulsiveness and marked hyperactivity." (TR at 399).

**7.** The ALJ relied on a single 2009 report from Dr. Schonwald although she had been seeing Simpson since 2005.

ceiving special education services from the Boston Public schools, that the plaintiff had an 2008–2009 IEP noting that the plaintiff benefitted from "a multisensory approach to learning," and that a behavior management plan was in place (TR at 400), the ALJ did little to address the plethora of documentation presented by the plaintiff. No reference was made to the requirements of prior IEPs, the substantive accommodations Simpson needs consequent to his disability or to the fact that the plaintiff had repeated grades twice or had been suspended numerous times. It simply is not enough to say that "[c]learly, multiple absences, for whatever reason, result in decreased performance in school- and learning-related tasks." (TR at 403).

The Supreme Court has held:

Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. *See, e.g., Cooper v. Bowen,* 815 F.2d 557, 561 (C.A.9, 1987). Often, complex legal issues are involved, including classification of the claimant's alleged disability or his or her prior work experience within the Secretary's guidelines or 'grids' used for determining claimant disability. *See, e.g., Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 772–773 (C.A.6, 1987). Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review. *See, e.g., Hooper v. Heckler,* 752 F.2d 83, 88 (C.A.4, 1985); *Mefford v. Gardner,* 383 F.2d 748, 758–759 (C.A.6, 1967).

*Sullivan v. Hudson,* 490 U.S. 877, 885–886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989); *see also, e.g., Palos v. Colvin,* 2013 WL 5217536, at *3 (C.D.Cal., Sept. 12, 2013) ("It is well established that an ALJ must comply with a district court's remand order."); *Scholer v. Colvin,* 2013 WL 5314433, at *4 (W.D.Wash., Sept. 23, 2013) ("the matter was reversed once and the ALJ specifically was instructed by this Court and by the Appeals Council to address [the treating source doctor's] conclusions. The Rule of Mandate requires that the order be followed. . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." (internal citations and quotation marks omitted)); *Freeman v. Astrue,* 816 F.Supp.2d 611, 615 (E.D.Wis., 2011) ("The agency's failure to follow a federal court's order on remand also constitutes legal error, subject to reversal in a subsequent appeal." (citations omitted)); *Wilder v. Apfel,* 153 F.3d 799, 803 (7 Cir., 1998) ("We had discussed all this evidence in our first opinion and explained why it was insufficient. The administrative law judge ignored our discussion. She was not free to do that. The law of the case doctrine, which requires the trial court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart, is applicable to judicial review of administrative decisions. It requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." (internal citations and quotation marks omitted)).

By failing to follow the directions laid out by Judge Gertner in her remand order, the ALJ erred as a matter of law. This error was not harmless. As a consequence, this case must be remanded once again. On remand, the ALJ must address the issues highlighted in Judge Gertner's

September 20, 2009 Memorandum and Order Remanding Case (TR at 423–439), as well as factor in the substantial evidence submitted by the plaintiff subsequent to the 2009 order, when analyzing the plaintiff's disability claim.

### VI. Conclusion and Order

For all the reasons stated, it is ORDERED that the Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner of the Social Security Administration (# 29) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that Defendant's Motion for Order Affirming the Decision of the Commissioner (# 39) be, and the same hereby is, DENIED. The decision of the ALJ is VACATED, and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

■ The plaintiff has not requested that the case be remanded to a different ALJ. The general rule appears to be that it is the Commissioner who has the discretion to assign a case to a new ALJ on remand. *See, e.g., Thibodeau v. Social Sec. Admin. Com'r,* 2011 WL 4344561, at *2 (D.Me., Sept. 13, 2011) ("Ultimately, it is not the Court's role to direct how the Commissioner delegates responsibility for processing remand orders within the Administration." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1269 (11th Cir.2007) ("When a court remands to the Commissioner, under section 405(g), the remanded case returns to the Appeals Council, which may, in its discretion, then remand the case to the administrative law judge."); *Travis v. Sullivan,* 985 F.2d 919, 924 (7th Cir.1993) (holding that the district court exceeded its authority in directing that a case be remanded to a new ALJ in the absence of evidence of bias and observing that the Appeals Council, as the Commissioner's designee, exercises supervisory administrative authority over remands from the

district court); *Mullen v. Bowen,* 800 F.2d 535, 537 (6th Cir.1986) (observing that the Appeals Council has jurisdiction over a case remanded by the district court)"), *Report and Recommendation adopted by* 2011 WL 4597501 (D.Me., Oct. 3, 2011). With that being said, courts have also recognized circumstances in which departure from the general rule is appropriate. *See, e.g., Hartnett v. Apfel,* 21 F.Supp.2d 217, 222 (E.D.N.Y., 1998) ("As a general matter, courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make. *See Travis v. Sullivan,* 985 F.2d 919, 924 (7th Cir.1993). In certain circumstances, however, courts have not hesitated to order the Commissioner to transfer a case to a different ALJ on remand. *See, e.g., Ventura v. Shalala,* 55 F.3d 900, 903 (3d Cir. 1995) (ALJ 'coercive and intimidating' toward claimant); *Ortiz v. Chater,* No. 95 CV 3126, 1997 WL 50217, at *3 n. 1 (E.D.N.Y. Jan. 30, 1997) (rather than have same ALJ review case for third time, 'fresh look by another ALJ would be beneficial'); *Kendrick v. Sullivan,* 784 F.Supp. 94, 103 (S.D.N.Y.1992) (ALJ had been 'frequently criticized by reviewing courts for insensitive behavior towards disability claimants')"); *Miles v. Chater,* 84 F.3d 1397, 1401 (11 Cir., 1996) (remand to a different ALJ ordered because "the process was compromised"); *Kolodnay v. Schweiker,* 680 F.2d 878, 880–81 (2 Cir., 1982); *King ex rel. S.K v. Commissioner of Social Sec.,* 2008 WL 4095493, at *5 (M.D.Fla., Aug. 29, 2008); *Sutherland v. Barnhart,* 322 F.Supp.2d 282, 291–93 (E.D.N.Y.2004) (collecting cases).

■ The Court is of the view that this is a case where " 'a fresh look by another ALJ [upon remand] would be beneficial[.]' " *McClaney v. Astrue,* 2012 WL 3777413, at *20 (E.D.N.Y., Aug. 10, 2012) (quoting *Collado v. Astrue,* 2009 WL 2778664, at *3 (S.D.N.Y., Aug. 31, 2009) (further citation omitted)). There is noth-

ing in the record to suggest that the ALJ harbors any bias or prejudice against the Simpson. However, "[t]he assigned ALJ has now twice considered [the plaintiff's] application, and twice committed substantial legal error in denying his application for benefits." *McClaney*, 2012 WL 3777413, at *20. In large measure the ALJ ignored Judge Gertner's direction to analyze the substantial evidence submitted by the plaintiff including school records, standardized testing, IEPs, medical records and reports, etc., to resolve the tensions in that evidence, and to explain how he reached his conclusions in his decision. This is precisely the same task the ALJ is required to undertake on this second remand.

In all of the circumstances, bearing in mind that the plaintiff filed for social security benefits nearly nine years ago and the matter remains unresolved, the Court believes that fairness and "the appearance of justice" require the assignment of a different ALJ. *McClaney*, 2012 WL 3777413, at *20. Accordingly, the Court directs the Commissioner to assign a new ALJ to this case on remand.